## PETER SKOW v. DAHL PUNCTURELESS TIRE COMPANY.[1]

May 14, 1915.

Nos. 19,120—(80).

**New trial — submission of issue to jury.**

1. In an action for personal injuries in which the defense of assumption of risk was neither pleaded nor litigated by consent, it is *held*, that the trial court did not err in granting a new trial for the error in submitting such question to the jury.

**Separate answers — defense unavailable.**

2. Where several defendants answer separately, a defense interposed by one is not available to a co-defendant where his separate answer does not present it.

Action in the district court for Hennepin county to recover $2,500 for personal injuries received while in the employ of defendant corporation. The case was tried before Dickinson, J., and a jury which returned a verdict in favor of defendant. From an order granting plaintiff's motion for a new trial, defendant corporation appealed. Affirmed.

*Stevens & Stevens* and *R. P. Mahoney,* for appellant.
*David R. Thomas,* for respondent.

1 Reported in 152 N. W. 755.

SCHALLER, J.

The plaintiff was an employee of the defendant corporation and had been in its employ for nearly a year prior to the date of the accident for which he sues.

It appears that a freight elevator used by defendant corporation was installed in the building occupied by the defendant corporation. The employees of the defendant corporation occasionally used this elevator for the purpose of going up and down from floor to floor. The elevator was so arranged, protected and guarded that, when in good condition, a certain gate prevented ingress into the elevator well at all times except when the elevator was opposite the landing, at which time the gate could be lifted up by a slight effort. When raised it caught against a hook which held it in place until the elevator left the floor, in which case the gate was released and fell back into place. The gate occasionally fell after being lifted, at which times employees of the defendant corporation, by giving the gate a hard push upwards, so jammed it that, although the hook might become disengaged as the elevator left the landing, the gate occasionally would remain fast. This jamming of the gate was done by the employees, for the purpose of preventing it from coming down and making more easy the work of loading and unloading when the elevator was at the landing.

On the day the accident occurred, plaintiff had completed his day's work and was ready to go home. This was between five and six o'clock in the evening, in the early part of December, 1912. He was standing near the stairway on the second floor of the building and in a playful manner threw a package of laundry at Dayl, the foreman, which struck Dayl in the back. Dayl, being nearer to the stairway than the plaintiff, prevented him from reaching the stairway. Plaintiff then ran toward the elevator in the rear of the building for the purpose of going down on the elevator. Thinking that Dayl was following, he continued on toward the elevator. When he reached it, he found the metal fire door closed. There was an electric light directly across the room from the elevator, near which another workman, named Erickson, was standing. There was some question as to whether or not the light was burning at the

time the plaintiff reached the elevator. This metal fire door was hung on pulleys running on a metal track located above the top of the door. Plaintiff opened the door by sliding it to one side, slipped on a metal plate about 14 inches wide which was part of the floor just inside of the metal door, and fell into the elevator shaft, landing on the elevator which was in the basement two stories below. Plaintiff struck the top beam of the elevator and thence fell to the floor, receiving a fracture of his arm and other injuries. It appears that the plaintiff knew of the defect in the gate, and knew that his co-employees occasionally slammed or wedged the gate so that it would not fall. He had on quite a few occasions, and up to two days before the injury, seen instances of it; had heard other employees talk about it, and had heard others speak to the foreman about it. There was sufficient evidence in the case from which the jury might have found that he was fully aware of the conditions.

The negligence set up in the complaint was the failure of the defendant to keep the gate or barrier in repair and in good working order, and the defective and unsafe condition of the gate. The complaint further alleges that the plaintiff, without negligence on his part, slipped and fell into the elevator well.

The defendants interposed separate answers. The answer of the defendant Elwell alleged, among other things, that the plaintiff was guilty of negligence which contributed to the injury, and that the plaintiff had full knowledge of the defective condition and improper use of the elevator by his fellow employees and assumed the risks incident thereto.

The answer of the defendant corporation consists of the admission of certain allegations of the plaintiff's complaint and of the fact of the employment and that plaintiff met with an accident, and sets up contributory negligence on the part of the plaintiff. It also alleges that defendant paid plaintiff's doctor bill in full, paid for all medical treatment and paid plaintiff's wages during all the time that he was ill and up to the time that plaintiff resumed work for the defendant corporation.

At the close of the plaintiff's case, the same was ·dismissed as to

the defendant James T. Elwell, and the issues between the defendant corporation and the plaintiff were litigated.

There was a conflict in the testimony as to whether or not the barrier gate was in place at the time of the accident, plaintiff claiming that it was not, and other witnesses that it was, and that plaintiff stopped, lifted up the gate and passed under it. There was some evidence that, even when the gate was closed, there was a space of approximately 18 inches between the bottom of the gate and the metal plate.

The case was submitted to the jury which returned a verdict for the defendant. A motion for a new trial was made, which was granted by the court exclusively upon error occurring at the trial, which is set forth to have been an instruction of the court that, if the jury found that plaintiff knew certain conditions and defects and understood and appreciated the risks of such defective conditions, he assumed the risks and that defendant would not be liable.

From the order granting a new trial, defendant corporation appeals.

Only two questions are presented: First, was the question of assumption of the risk litigated in this case with the consent, express or implied, of the plaintiff; second, if not, was it necessary to plead this defense?

We have examined the record of the proceedings on the trial and agree with the learned trial court that the plaintiff did not consent to the litigation of the question of assumption of the risk. The question of contributory negligence was an issue properly raised by the pleadings herein and, as in most cases, the evidence introduced by the parties to show negligence or contributory negligence, might also be proper on the question as to whether or not the plaintiff assumed the risk. But it does not necessarily follow that, although the evidence may be perfectly competent to prove assumption of the risk, such defense can be taken advantage of when it is not pleaded.

The defense of assumption of the risk, like the defense of contributory negligence, is an affirmative defense and to be available must be pleaded as such. Hill v. Minneapolis Street Railway Co.

112 Minn. 503, 128 N. W. 831; Kommerstad v. Great Northern Ry. Co. 120 Minn. 376, 139 N. W. 713; Crotty v. Great Northern Ry. Co. 120 Minn. 535, 139 N. W. 948; Hoblit v. Minneapolis Street Ry. Co. 111 Minn. 77, 126 N. W. 407; Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A. (N.S.) 138.

The defendant may avail himself of the defense by demurrer or by denial in the answer when the issue is tendered by the complaint, or on the trial when it conclusively appears in plaintiff's case, or when it is litigated without objection. Such is not this case.

We do not think that the appellant could properly raise this issue under the answer of its codefendant Elwell. The answers were separate and, although the issue was tendered by Elwell, it was not tendered by the answer of the defendant corporation, and when at the close of the plaintiff's testimony, the action was dismissed as to Elwell, the trial as to appellant and respondent proceeded on the issues properly joined by them.

Order affirmed.