[L. A. No. 20041. In Bank. July 11, 1947.]

CARL J. FREEMAN et al., Appellants, v. DALE
CHURCHILL et al., Respondents.

Russell H. Pray, Pierson & Block, E. W. Sheridan, Henry F. Walker and D. W. Doddridge for Appellants.

Parker, Stanbury & Reese, Raymond G. Stanbury, Spray, Davis & Gould and Karl Davis for Respondents.

CARTER, J.—Plaintiffs were unsuccessful in their action for the alleged wrongful death of their minor child and the personal injuries of plaintiff, Winifred Freeman, the child's mother. The jury returned a verdict in favor of defendant, Dale Churchill, the operator of the truck, and pursuant to a direction so to do, in favor of the defendants, C. O. Sparks and Mundo Engineering Corporation, the alleged employers of Churchill.

The accident occurred in Compton in an area neither residential nor business in character. Atlantic Avenue extends north and south, crossing Olive Street which runs east and west. Both streets are four-lane arteries, the lane next to the center line being about 10 feet in width and the outer lane considerably wider. A double white line divides each street in the center. The intersection of the streets is controlled by four automatic traffic signals, one at each corner. Each has three lights, green, amber and red. The light changes from green to amber, then to red, followed by green on the cross street. The amber light shows for 3 seconds. It indicates caution—a warning that the red stop light will soon appear.

At 4 p. m. on a clear day defendant Churchill was driving a truck, heavily loaded with hot asphalt, south on Atlantic approaching its intersection with Olive. Plaintiff, Mrs. Freeman, was driving her automobile east on Olive and approaching the intersection. Both were planning to continue on the respective streets on which they were traveling after traversing the intersection. A car heading east on Olive was halted in the lane next to the center line at the west crosswalk of the intersection waiting for the signal to change in its favor. Mrs. Freeman drove her car in the right lane, to the right of the above-mentioned car and passing it, entered the intersection. She testified that she was traveling 25 to 30 miles per hour when approaching the intersection and it showed a red light; that it changed to green when she was 25 feet from it (her speed at that time was 10 to 15 miles per hour) and she proceeded to enter the intersection in high gear. She did not retard her speed or apply her brakes. She looked north but did not see the truck until it was 5 feet from her, although the driver of the car she passed at the entrance of the intersection saw the truck 150 feet from the intersection. She did not see the car she passed.

Defendant Churchill testified that his speed was not over 25 miles per hour and that he entered the intersection on the amber light for north-south traffic. He observed the light as green about 100 feet before the intersection. He did not observe it change from green to amber. The collision occurred in the southeast quarter of the intersection. He commenced applying his brakes at the entrance of the intersection and left skid marks from there to the point of impact. He was traveling in the outside lane (his right-hand lane), but curved left after entering the intersection to avoid the collision. His truck was approaching a position parallel to Mrs. Freeman's car when the collision occurred. His truck shoved her car for a considerable distance. A witness to the collision, Player, testified that Churchill was near the middle of the intersection when Mrs. Freeman was about 10 feet in the intersection.

Plaintiffs assert that the evidence establishes as a matter of law that defendant Churchill was negligent and Mrs. Freeman was free from contributory negligence.

It is clear that the jury could have found (inasmuch as it found for defendant Churchill, it may have decided that Churchill was not negligent, or that Mrs. Freeman was contributorily negligent) plaintiffs had failed to sustain their

burden of proving negligence. In addition to the function of assessing the credibility of the witnesses and the weight of the evidence, it may have concluded that Churchill entered the intersection on the amber light and that, acting as a person of ordinary prudence, he was justified in so doing, considering the speed at which he was traveling, the weight of his vehicle and load, and the dangers accompanying a stop under these circumstances. He stated that the light for north-south traffic was green when he was 100 feet away and that he did not apply his brakes with full force at the entrance to the intersection because it would throw the truck out of control. He saw Mrs. Freeman's car when he entered the intersection, and she at that time had commenced to enter it. He then applied his brakes. The amber light when following the green indicates (under the law effective at the time of the accident) that traffic facing it shall stop before entering the intersection "but if such stop can not be made in safety a vehicle may be driven cautiously through the intersection or past such signal." (Veh. Code, § 476.) True, a jury's finding of negligence would have found support in the evidence, but with that we are not concerned.

On the issue of contributory negligence the jury could have likewise found its presence or absence, but if necessary to support the judgment it may be assumed that it found the existence of it. Assuming Churchill was properly in the intersection (a matter above discussed) Mrs. Freeman when facing a "go" signal was authorized to proceed through the intersection, "But vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or adjacent crosswalks at the time such signal is exhibited." (Veh. Code, § 476.) (See, also, *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 838 [161 P.2d 673, 164 A.L.R. 1, 8].) She testified that she looked but did not see the truck until it was 5 feet away, although the driver of the car she passed (Berry) which was halted on Olive at the west side of Atlantic, saw it before it entered the intersection. She did not even see the Berry car. While her view may have been obstructed some of the time, the jury might have decided that she should have seen it. The impact occurred in the southeast quarter of the intersection, meaning she had to cross the west half of Atlantic. Although she testified she was 25 feet from the intersection when the light turned green, it could be inferred from the location of the impact, her speed

and Player's testimony as to the position of the truck near the center of the intersection when she was 10 feet into it, that she entered the intersection at least immediately upon the change of the signal from red to green. Under all those circumstances we cannot say as a matter of law that a finding of contributory negligence would not be supported.

■ Plaintiffs urge error in instructions to the jury. At Churchill's request the jury were advised that if they found both vehicle operators negligent (which negligence proximately contributed to the accident), "you may not compare the negligence of one with that of the other for the purpose of attempting to determine which, if either, was more negligent than the other. This is because there is no such thing as comparative negligence in the law of this State. Any negligence on the part of a plaintiff which proximately contributes to an accident bars a recovery whether the defendant was more or less negligent." Plaintiffs' complaint is that the use of the words "any negligence" in the last sentence advised the jury that even a slight *degree* of negligence by Mrs. Freeman, as distinguished from ordinary negligence, contributing in any degree, proximately to cause the accident, would bar the recovery. (See *Robinson* v. *Western Pac. R. R. Co.,* 48 Cal. 409; 19 Cal.Jur. 648.) It is very doubtful that such a construction may be reasonably placed on the language. The instruction was concerned with cautioning the jury not to compare the negligence of plaintiff with that of defendant. Any doubt that may have been created was certainly clarified by other instructions. (See *Metcalfe* v. *Pacific Electric Ry. Co.,* 63 Cal.App. 331 [218 P. 486].) Instructions were given that to establish contributory negligence defendant must prove that Mrs. Freeman "was negligent and that such negligence contributed in some degree as a proximate cause of the injury"; that both drivers were required to exercise ordinary care and "The same degree of care was required of each of them."; that "Contributory negligence is negligence on the part of a person injured which, cooperating in some degree with the negligence of another, helps in proximately causing the injury of which the former thereafter complains. One who is guilty of contributory negligence may not recover from another for the injury suffered. The reason for this rule of law is not that the fault of one justifies the fault of another, but simply that there can be no apportionment of blame and damages among the participating agents of causation," and negligence was fully defined.

 The jury was instructed that both drivers were required to exercise the same care and "Each was required to maintain a reasonable lookout for other traffic lawfully using the highways, as such lookout would have been maintained by persons of ordinary prudence in their position. Neither of them had the right to assume that the way was clear, if the facts were such that persons of ordinary prudence so situated would not so have assumed," and plaintiffs assert that thereby the jury were told that a person of ordinary prudence would have kept a lookout; that is, the jury was advised as a matter of law of the duty of a person of ordinary prudence. The use of the word "as" may have a meaning of "because" or "in the same way, manner, degree or extent." Under the latter meaning the instruction would require a lookout in the same way or extent that a person of ordinary prudence would maintain, and by the second sentence the parties were required to exercise ordinary care with regard to observing other traffic. It should be clear that for a person to meet the test of ordinary care, he must maintain a *reasonable* lookout for traffic *lawfully* on the highway. The question of whether Churchill was lawfully in the intersection was left to the jury, and, as we have seen, it could have concluded he was. As to him, other persons, including Mrs. Freeman, should be required to make reasonable (also left to the jury) observations. When entering signal-controlled intersections on the "go" signal the entrant should look to see if cross traffic which has lawfully entered the intersection has cleared it. The cases relied upon by plaintiffs are not in point. *Salomon* v. *Meyer,* 1 Cal.2d 11 [32 P.2d 631], *Long* v. *Barbieri,* 120 Cal.App. 207 [7 P.2d 1082], and *Nickell* v. *Rosenfield,* 82 Cal.App. 369 [255 P. 760], involved the question of whether a *continuous* lookout was essential. Under the instructions in the instant case Churchill must have been lawfully in the intersection (to be determined by the jury) and the lookout required of Mrs. Freeman was such as a reasonable person would maintain. In *Taylor* v. *Sims,* 72 Cal. App.2d 60 [164 P.2d 17], the defendant had entered the intersection on a red light and was not lawfully in the intersection. Finally, the jury was fully instructed at the request of the plaintiffs and defendants of the duties of persons entering signal-controlled intersections, and at Churchill's request (not objected to), as to the duties of observation.

 At Churchill's request the jury was instructed that the fact that there was a criminal action arising out of the

accident should not influence their consideration in any way and "It has been material to refer to it in this trial only because statements made by persons who testified previously may be shown on cross-examination to test the accuracy of testimony given by them in this trial." The instruction was manifestly given because references were made several times to a criminal trial of Churchill and reference was made to his testimony there given. Plaintiffs assert that the last sentence limited the use of the former testimony to impeachment, whereas it contained admissions of Churchill. Plaintiffs allude to evidence given at the criminal·trial to the effect that "Q. When you say you applied your brakes as you entered the intersection, do you recall whether or not the wheels were locked, causing them to skid at that time? A. As I recall, yes. Q. When you first applied them? A. Do I recall if they were locked? Q. Yes. A. Why, no." Plaintiffs claim that that shows an admission by defendant Churchill that he locked his wheels when he first entered the intersection, allegedly contrary to his testimony at the trial. On the contrary, read as a whole, it merely means he did not recall whether they were locked. Moreover, at the trial he testified that: "Q. When you first saw this car coming into the intersection, when you saw the orange light at the signal, did you apply your brakes lightly? A. No, sir. Q. Did you apply them hard? A. I applied my foot to the pedal lightly, which would apply the brakes hard, yes, hard enough to cause the heavy tire marks slowing the truck perceptibly." In any event, very little significance may be attached to the occurrence. It certainly was not prejudicial error. Moreover, plaintiffs did not request an instruction giving broader scope to the testimony given at the criminal trial, and from all that appears from the record that testimony was used for the purpose of impeaching Churchill rather than as independent evidence.

■ The motion of defendants Sparks and Mundo Engineering Company for a directed verdict on the grounds that plaintiffs had failed to establish an employer-employee relationship between them and defendant Churchill was granted and that is claimed as error. Those defendants reply that if such were error it could not be prejudicial to plaintiffs for their right to recover against those defendants being predicated upon *respondeat superior* could not prevail unless the employee Churchill was liable.

 It is the firmly-established rule that a judgment on the merits favorable to an employee in an action by a third person for a tort of the employee is a bar to an action by the third person against the employer where the latter's asserted liability for the tort rests upon *respondeat superior* and not his independent tort. (*Jentick* v. *Pacific Gas & Elec. Co.*, 18 Cal.2d 117 [114 P.2d 343]; *Will* v. *Southern Pacific Co.*, 18 Cal.2d 468 [116 P.2d 44]; *Bradley* v. *Rosenthal*, 154 Cal. 420 [97 P. 875, 129 Am.St.Rep. 171]; see 16 Cal.Jur. 1112; 31 A.L.R. 194; 112 A.L.R. 404; 54 L.R.A. 649; Rest., Judgments, 96; Freeman on Judgments [5th ed.], §§ 451, 469, 470-479.) And the rule is the same whether the actions are separate or the employee and employer are joined in the same action. (See, authorities, *supra*.) A similar result should follow when the employer does not, but the employee does, plead the defense of contributory negligence, as was true in the case at bar, although that defense must be pleaded to be available. It would be anomalous to say that if they were sued separately the judgment exonerating the employee would be res judicata in a subsequent suit against the employer where he would make no plea except res judicata, but would not where they are both sued in the same action and the employer fails to plead the defense. Suppose in the instant case the judgment on the directed verdict for the alleged employers (defendants Sparks and Mundo Engineering Company) were reversed, before retrial those defendants could amend to plead as res judicata the judgment exonerating Churchill, and that would be the end of the case. There is no necessity for pursuing such a devious course. It may well be said that, although it is generally true that the defense of one defendant does not inure to the benefit of his codefendants, in situations such as where the liability is predicated upon *respondeat superior* and the defense raised by the employee (the codefendant being the employer) is not personal to him but goes to the merits of the case (plaintiffs cannot recover if Mrs. Freeman was contributorily negligent), the defense pleaded by the employee inures to the benefit of the employer. (*Plott* v. *York*, 33 Cal.App.2d 460 [91 P.2d 924]; *Beddow's Admr.* v. *Barbourville Water, Ice & Light Co.*, 252 Ky. 267 [66 S.W.2d 821]; 49 C.J. 209.) Plaintiffs rely upon *Skow* v. *Dahl Punctureless Tire Co.* (*Skow* v. *Elwell*), 129 Minn. 324 [152 N.W. 755], and *Kirk* v. *Santa Barbara Ice Co.*, 157 Cal. 591 [108 P. 509]. In view of the foregoing discussion we do not

believe the Skow case is sound. In the Kirk case the action was against the defendant ice company and Pike to whom it had delegated the repair of a sidewalk which it had torn up. Plaintiff was injured by an obstruction in the walk and it was held that even though Pike was an independent contractor the ice company was liable because of its duty with regard to the walk. The verdict exonerated Pike and held the ice company, and the latter appealed, complaining of a jury instruction that stated that it could exonerate Pike and hold the company even though plaintiff was contributorily negligent, for Pike but not the company had pleaded the defense. The court held that inasmuch as there was no evidence of contributory negligence the instruction was harmless. It went on to say: "If the instruction were erroneous and if the jury had found plaintiff guilty of contributory negligence while finding in favor of Pike and against the ice company, *then perhaps the latter would have cause for complaint;* but we cannot see how harm resulted to it in view of the finding that there was no contributory negligence. We think, however, that the instruction as an abstract proposition of law is correct, although its bearing upon the case as disclosed by the statement is not obvious." The statement is ambiguous in that it states the instruction is abstractly correct but casts doubt upon it in the same breath. In any event it is obviously dictum and insofar as it expresses views contrary to the foregoing it is disapproved.

Finally, plaintiffs urge that even though Sparks and Mundo Engineering Company were independent contractors they would still be liable where negligent instructions are given to the independent contractor, the work is of inherently dangerous character or the duty is nondelegable. (See Rest., Torts, § 409 et seq.; Prosser on Torts, p. 483 et seq.; 13 Cal. Jur. 1046 et seq.) But plaintiffs' pleadings base their action on the ground of *respondeat superior* and so state in their brief, hence there can be no doubt of the application of the rule above announced.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.