[L. A. No. 21532. In Bank. May 11, 1951.]

MAC WADE POPEJOY, Respondent, v. H. H. HANNON et al., Appellants.

Sidney A. Moss and Henry F. Walker for Appellants.

Rogers & Carnes and Byron R. Bentley for Respondent.

EDMONDS, J.—H. H. Hannon, S. F. Hannon and Helen Hannon are partners doing business as Mutual Molding and Lumber Company. H. Sugarman, who conducted a trucking business on his own account, was employed by the Hannons as foreman of their lumberyard. Mac Wade Popejoy worked for Sugarman as a truck driver. Although his trucking business was an independent enterprise, the Hannons permitted Sugarman to have a telephone in the lumberyard which was listed in the name of Sugarman Trucking Company.

Popejoy sued for damages for personal injuries sustained on the premises of the partnership. The appeal from the judgment entered upon the verdict of a jury in his favor, and from the order denying a motion for judgment notwithstanding the verdict, principally concerns rulings upon instructions.

There is little dispute as to how the accident occurred. The essential facts are as follows:

During working hours, when he was not driving for Sugarman, Popejoy occasionally and gratuitously helped around the lumberyard by answering the telephone, removing blocks of wood from tiers of lumber as they were being moved about the yard, and assisting with the loading of customers' trucks. Usually the trucks were loaded by means of a wheeled machine, known as a hyster, which is used to lift stacks of lumber on horizontal prongs movable in a vertical plane.

On the day of the accident, "Shorty" Kemp, a lumberyard employee, was loading a customer's truck by means of the hyster. Kemp left the hyster to do other work. Popejoy then operated the hyster and moved the top tier of lumber from a stack to the customer's truck. When he had raised the remaining tier about two feet from the ground, a nearby stack of lumber fell toward him. Popejoy jumped from the hyster, striking his knee upon the asphalt surface of the lumberyard. The fall resulted in a fractured kneecap and permanent injury.

At the time of the accident Sugarman said, "Mac, it's all my fault. I shouldn't have had that load on the bottom." This statement was amplified by his testimony at the trial. He told the jury that the bottom tier of the stack which fell had been put in place by him about a week prior to the accident. He had then noticed that the lumber was warped

and loose. Later, he said, due to lack of space in the lumber-yard, he placed two more tiers of smooth lumber on top of the pile. He thought the lumber would be safe although the lowest tier was somewhat wobbly.

Supplementing this testimony there was evidence to the effect that smooth boards tend to slide more easily than rough lumber. Admittedly the stack which fell did not have "stickers" which are usually placed in a stack of lumber to prevent slipping.

The Hannons denied the allegations of the complaint and set up the affirmative defenses of contributory negligence and assumption of risk. Generally, the defense at the trial was lack of proximate cause and absence of any negligence.

The Hannons present several grounds as justifying a reversal of the judgment and the order denying a motion for judgment notwithstanding the verdict. They contend that the trial court erred in giving a contingently requested instruction, the contingency not having occurred. Other points relied upon relate to the trial court's refusal to instruct the jury upon the scope of the invitation to Popejoy to be upon the property, the duty owed to others than invitees, and the doctrine of assumption of risk. An instruction attacked as erroneous told the jury that failure to give warning to an invitee of certain dangers constitutes negligence. Complaint is made of the trial judge's statement of the facts under which Popejoy was to be considered an invitee, and the definition of the duty owed to an invitee. The Hannons also attack as erroneous the instruction to the jury which declared that Popejoy might recover damages against them under the doctrine of *respondeat superior*.

Popejoy requested an instruction upon the doctrine of res ipsa loquitur. In order to determine the necessity for submitting a qualifying instruction, the Hannons asked the trial judge whether Popejoy's proposed instruction would be given. When there was no answer to the inquiry, the Hannons submitted an instruction to be given only in the event that the jury was instructed as requested by Popejoy. His instruction was not given, but the jury nevertheless was charged in the form submitted by the Hannons as follows: "The defendants, however, are not required to prove by a preponderance of the evidence that they were free from negligence which proximately caused the lumber to fall. They are bound to produce only sufficient evidence to create in your minds such doubt as to why the lumber fell that you cannot say you are convinced

by a preponderance of the evidence that the falling of the lumber was proximately caused by the negligence of the defendants.''

The Hannons say that when the jury was not instructed upon the doctrine of res ipsa loquitur, this instruction cast upon them the duty to produce evidence relating to an issue upon which Popejoy had the burden of proof. In an action founded upon negligence, the burden is upon the plaintiff to prove wrongful conduct of the defendant which was the proximate cause of injury. The challenged instruction, the argument continues, imposed upon the Hannons the duty to produce evidence to the effect that they were free from negligence which proximately caused Popejoy's injury. The error could not have been prejudicial, Popejoy answers, because the jury was instructed that the burden of proof is upon the party who asserts the affirmative of an issue.

 Not having instructed the jury upon the doctrine of res ipsa loquitur, the qualifying instruction contingently requested by the Hannons should not have been given. Instructions of the court correctly stating the requirements laid upon a plaintiff did not cure the error. By one instruction the jury was told that the burden of proving negligence rested upon Popejoy. The reasonable construction to be placed upon the challenged instruction is that the Hannons were required to present direct evidence either of their freedom from negligence or the absence of proximate cause. Clearly the two instructions are inconsistent.

 However, the record shows abundant evidence offered by Popejoy tending to prove his status as an invitee which, if not overcome by the Hannons, would entitle him to a verdict. The effect of the instruction complained of was to say that the Hannons, in order to defeat Popejoy's claim, had the duty to produce a preponderance of evidence to the contrary. There is little difference between the challenged instruction and one given at the request of the Hannons which reads, in part: ''When the evidence is contradictory, the decision must be made according to the preponderance of evidence, by which is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. Should the conflicting evidence be evenly balanced in your minds, so that you are unable to say that the evidence on either side of the issue preponderates, then your finding must be against the

party carrying the burden of proof, namely, the one who asserts the affirmative of the issue.'' Under these circumstances, it cannot be said that the challenged instruction so prejudiced the Hannons as to require a reversal of the judgment. (Cal. Const., art. VI, § 4½.)

Also assigned as error is the refusal to instruct the jury upon the effect of an invitee's exceeding the scope of his invitation and in regard to the duty owed to others than invitees. One theory of the Hannons is that Popejoy was not an invitee when operating the hyster, although he might have been an invitee as to the premises in general.

At the request of both parties, the jury was instructed as to the distinctions between an invitee and a licensee, and was told that ''[T]oward an invitee, he who extended the invitation, express or implied, is obliged to refrain from active negligence and to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee in the pursuit of a purpose embraced within the invitation.'' But the court refused to give the instruction requested by the Hannons to the effect that, under certain circumstances, an express or implied invitation may be limited in scope; if the invitation extends only to a certain portion of the premises, the invitee is a licensee or trespasser as to the remainder.

Upon the issue as to whether Popejoy was an invitee at the time and place of the accident, there is only slight conflict in the evidence. Silas Hannon testified that he had never seen Popejoy operate the hyster, nor did he ever request him to do so. About three weeks prior to the accident, testified Hannon, some of the employees had been on and about the machine during their lunch period. He instructed Sugarman to keep all men off of it with the exception of ''Shorty'' Kemp, but this order was never relayed to Popejoy. Sugarman testified that he had never directed Popejoy to use the hyster. Concededly, Popejoy knew the machine belonged to the Hannons and not to his employer, and that he was neither obligated nor paid to operate it. These facts, the Hannons argue, show that, in operating the hyster, Popejoy was not an invitee but acted as a mere volunteer, gratuitously and outside the scope of the invitation to him to be in the lumberyard.

However, Sugarman, when called as a witness for the Hannons, told the jury that he had seen Popejoy operate the hyster upon several occasions prior to the accident, and had never told him not to use it. He said, ''I had quite a few jobs

to do and a lot of times, I would go over to the mill to make out a mill ticket, and the carrier would bring up my load of lumber going on the truck, and sometimes Mr. Popejoy would get on . . . [the hyster] and lift . . . [the load] up and set it on this truck while I was making out the mill tickets.'' Sugarman also testified that he saw Popejoy operating the hyster just prior to the accident, and, when called to the mill, he ''. . . just left him there. . . .'' And the testimony of Silas Hannon was directly contradicted by Popejoy. The injured man told the jury that, at one time, Silas Hannon had asked him to load a customer's truck with the machine.

''The question as to whether the invitation, express or implied, included that part of the premises where the injury occurred is generally not one of law. On the contrary, it is usually a question of fact for the determination of the court or jury.'' (*Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 760 [185 P.2d 94]; quoted with approval in *Boucher* v. *American Bridge Co.*, 95 Cal.App.2d 659, 670 [213 P.2d 537].)

Nevertheless, only those instructions should be given which are supported by the evidence. (*Davenport* v. *Stratton*, 24 Cal.2d 232 [149 P.2d 4].)

''An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises or local custom.'' (*Oettinger* v. *Stewart*, 24 Cal.2d 133, 136 [148 P.2d 19, 156 A.L.R. 1221].) '' 'The gist of liability consists in the fact that the person injured did not act merely for his own convenience or pleasure, but that an owner or occupant held out an invitation or allurement which led him to believe that the use made by him of the premises was in accordance with intention and design.' '' (*Barker* v. *Southern Pac. Co.*, 118 Cal.App. 748, 751 [5 P.2d 970, 6 P.2d 982].)

The testimony of Sugarman shows without dispute that he, as an agent for the Hannons, had seen Popejoy operating the hyster upon several occasions and had never told him not to do so. He saw Popejoy loading a customer's truck just prior to the accident and ''left him there.'' The evidence is uncontradicted that, when the lumber started to fall, Popejoy was on the hyster and operating it to the mutual benefit of Sugarman and the Hannons. The record, therefore, includes no evidence which would justify giving the instruction requested by the Hannons to the effect that the invitation to Popejoy to be upon the premises excluded his operation of the hyster.

In defining the duty owed an invitee, the court stated that the Hannons ". . . owed the duty to use ordinary care to have the premises in a safe condition and to supply a safe place in which to work. . . ." Their verdict should be in favor of Popejoy, the jurors were told, if the Hannons failed in that regard and such failure was a proximate cause of the injury. The Hannons contend that a landowner's duty is only to keep the premises in a *reasonably* safe condition, not a *safe* condition. It is further argued that the instruction could be understood to place an absolute duty upon the defendants "to supply a safe place in which to work."

To support their position, the Hannons cite *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 167 [195 P.2d 416], in which the instruction complained of read: "It is the duty of the driver or operator of any kind of vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision." The contention was made, ". . . that the instruction might be misunderstood to impose the absolute duty 'to avoid a collision'; that the jury might believe that the qualifying words, 'to exercise ordinary care,' relate only to the duty 'to avoid placing himself or others in danger' and not to the duty 'to avoid a collision.'" The court held that "The instruction is subject to such possible construction and, therefore, to criticism." However, in that case, the facts and the implied finding of the jury showed that the verdict was not reached because of the instruction.

█ Prejudicial error does not necessarily result from the giving of an instruction which, subjected to meticulous analysis, might be given a "possible construction" making it subject to "criticism." It is extremely doubtful that the jurors analyzed the instruction with such exactitude as counsel for the Hannons.

█ As to the argument that the court erred in omitting the qualifying word "reasonable," it was said in *Jones* v. *Bridges*, 38 Cal.App.2d 341, 345, 346 [101 P.2d 91], that, as a general rule, the expressions "safe" and "reasonably safe" are used synonymously and interchangeably. Although the omission of the word "reasonable" from certain of the instructions considered in the Jones case was not approved, it was held that the jury could not have been misled by the omission. The same conclusion follows in the present case. In an instruction preceding the one here challenged, the court stated: "Toward an invitee, he who extended the invitation

express or implied, is obliged to refrain from active negligence and *to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee . . ."* (Italics added.) It would have been more appropriate for the court to have used the same language in both instructions, but it can hardly be said that the jury was misled or confused by the varied wording to the prejudice of the appellants. Moreover, considering the entire record, it cannot reasonably be said that the instruction complained of compels a reversal of the judgment. (Cal. Const., art. VI, § 4½.)

At the request of Popejoy, the following instruction was given: "If the plaintiff Mac Wade Popejoy, at the time of the accident, was in the employ of H. Sugarman, and while acting in the scope of such employment was working upon the premises of the defendants assisting the defendants and their employees, in the course of loading a truck with lumber, and if the defendants or their employees knew of such fact and acquiesced therein, then you are instructed that the plaintiff Mac Wade Popejoy was an invitee. . . ." The Hannons contend that because "mere knowledge and acquiescence" are not enough to make a person an invitee, the instruction erroneously required the jury to find Popejoy to be an invitee upon an insufficient basis. The fallacy of this argument is that the instruction defined an invitee as a person on the premises of an owner with much more than his "mere knowledge and acquiescence." In addition to this requirement, the jury was told that, to be an invitee, Popejoy must have been working upon the premises assisting the Hannons and their employees to load a truck with lumber.

It is the purpose for which a person is upon the premises of another which renders him an invitee rather than a licensee. For that reason, *Herzog* v. *Hemphill,* 7 Cal.App. 116 [93 P. 899], relied upon by the Hannons, has been distinguished from such cases as the present one. (*Koppelman* v. *Ambassador Hotel Co.,* 35 Cal.App.2d 537, 540-541 [96 P.2d 196] ; *cf. Oettinger* v. *Stewart,* 24 Cal.2d 133, 136 [148 P.2d 19, 156 A.L.R. 1221].) Furthermore, the following instruction given at the request of both plaintiff and defendants, clarified any possible doubt created by the instruction of which the Hannons complain: "Whether a person entering the premises of another bears the legal status of an invitee or of a mere licensee depends upon the purpose of the visit. So long as its object is the pleasure of only the visitor or of some third party,

or of a purely social nature, then he is, at most, only a licensee. When, however, the visitor has a purpose that is related to the occupant's business or that involves some matter of mutual business interest or advantage, then an invitation to use the premises may be inferred, and whether so inferred or expressed, the invitation and the purpose make the guest an invitee.''

At the request of Popejoy the jury was instructed as follows: ''If you find that the condition of the premises at the time and place of the injuries in question was dangerous and that the defendants or their agents, including H. Sugarman, their foreman, knew or should have known of such danger, and if the said dangerous condition was not known to the plaintiff and he was not negligent in failing to discover same, you are instructed that the defendants owed a duty to inform plaintiff of said danger and a failure in that regard would constitute negligence on the part of the defendants.'' The Hannons correctly claim that the instruction is erroneous in that a warning was only required if they believed Popejoy would not discover the dangerous condition or risk involved. (*Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356].)

A landowner will be liable for failure to warn an invitee of a dangerous condition which exists upon the premises if he knows or should know of the danger which he has no basis for believing that the invitee will discover. (*Crane* v. *Smith*, *supra*; Rest., Torts, § 343.) And it is also obvious that before the invitee may recover for the landowner's breach of duty he must prove himself to be free from negligence in failing to discover the danger and show that he did not know of it and assume the attendant risks. The instruction given in the present case omitted an essential element of the rule. The Hannons contend that, correctly instructed, the jury might have determined that they had no basis for believing a warning to be necessary. They argue that this is a conclusion reasonably to be inferred from the evidence that for about 20 years Popejoy had been employed in lumberyards. It also appears that for about 10 years of that time he had worked with stacked lumber and knew of the likelihood of an accident such as that which occurred.

Upon the same evidence, the jury determined that Popejoy, acting as a reasonable man, was not negligent in failing to discover the dangerous condition. It is highly improbable that if the instruction had included the element omitted from it, the jury would have found a sufficient factual

basis for a belief by the Hannons that Popejoy would or should discover the danger. It cannot, therefore, be said that the error was prejudicial.

The Hannons contend that the court erred in refusing to give an instruction upon the doctrine of assumption of risk. They argue that the evidence as to Popejoy's previous experience in the lumber business supports the application of the doctrine.

The lumber which fell was stacked upon ground sloping to the south. Popejoy undertook to remove the boards from this position although he knew that planed or smooth lumber tends to slide more readily than rough lumber. There is evidence that Popejoy was not requested to load any lumber. He knew he did not have to do so, but he voluntarily assumed to operate the hyster and in doing so placed himself to the south of the stack of smooth lumber which fell.

Although the evidence might support a finding that Popejoy, with his previous experience, should have realized the dangers resulting from negligence in stacking lumber, the Hannons do not refer to any testimony which would sustain a finding that he knew of the manner in which the lumber which fell had been stacked. An invitee does not assume the risk of latent dangers which are created by the negligence of another and of which he has no notice. (*Oettinger* v. *Stewart*, 24 Cal.2d 133, 139 [148 P.2d 19, 156 A.L.R. 1221]; *Hedding* v. *Pearson*, 76 Cal.App.2d 481 [173 P.2d 382].) At the request of both parties, the jury was instructed that Popejoy had the right, as an invitee, to assume that the premises were reasonably safe. For the court to have also given an instruction to the effect that Popejoy assumed the risk of moving negligently stacked lumber, without having any notice of that fact, would have been a serious contradiction of the correctly stated rule.

The last assignment of error is based upon the trial court's instruction upon the doctrine of *respondeat superior.* The Hannons contend that Popejoy may not recover against them because, as an employee of Sugarman, he was included within the provisions of the Workmen's Compensation Act and his exclusive remedy is limited to the benefits provided by that statute. (*Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8 [118 P.2d 809]; *Fitzpatrick* v. *Fidelity & Casualty Co.,* 7 Cal.2d 230 [60 P.2d 276]; *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 200 Cal. 579 [253 P. 926].) As he cannot maintain an

action for damages against Sugarman for his acts of negligence, there is no basis for this action against the Hannons because their responsibility is only secondary. (*Bradley* v. *Rosenthal*, 154 Cal. 420 [97 P. 875, 129 Am.St.Rep. 171].)

In reply to this argument, Popejoy relies heavily upon *Baugh* v. *Rogers*, 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043], contending that it is determinative of his rights. That action was brought by a woman, employed in the home of Rogers. She was struck by an automobile owned by Warnock and driven by Rogers.

The relationship between the plaintiff and Rogers, and the circumstances under which the injury occurred, limited his liability to workmen's compensation. In the suit brought by the injured woman, the questions presented for decision were: (1) Is the fact that Baugh and Rogers are subject to the provisions of the Workmen's Compensation Act a defense to the action insofar as Rogers is concerned? (2) "If recovery cannot be had in this action by plaintiff against defendant Rogers, the negligent operator, may she nevertheless recover from the owner of the automobile, defendant Warnock, by virtue of the provisions of section 402 of the Vehicle Code?" (3) "If plaintiff recovers judgment herein against the owner Warnock, is such owner necessarily precluded from any recourse against the negligent operator by reason of the latter's relation to the plaintiff?" A divided court held that, although the relationship between Baugh and Rogers was a complete defense to an action against him, there might nevertheless be a recovery against Warnock. This conclusion left Rogers, who had a complete defense against Baugh, liable to Warnock.

However, the liability of Warnock to the plaintiff-employee was based upon the express terms of section 402 of the Vehicle Code which imposes a primary and direct liability upon the owner of a vehicle. (24 Cal.2d at pp. 208-209.) The determination as to the ultimate liability of the negligent operator-employer was placed upon the principles governing bailments. To state the rights of Popejoy in the formula which the court used in *Baugh* v. *Rogers*, and excluding the application of section 402 of the Vehicle Code, the question is whether Baugh could have recovered against Warnock if Rogers had been Warnock's employee? The Baugh decision did not hold that she could do so and it is not here controlling.

The responsibility of an employer for the acts of his employees under the doctrine of *respondeat superior* is

dependent upon the injured person's right to recover against the employee. (*Freeman* v. *Churchill,* 30 Cal.2d 453, 461 [183 P.2d 4].) ▓▓ An employer who has been held liable under the doctrine of *respondeat superior* has the right of recoupment against the negligent employee. (See *Bradley* v. *Rosenthal,* 154 Cal. 420, 423 [97 P. 875, 129 Am.St.Rep. 171] ; *Myers* v. *Tranquility Irr. Dist.,* 26 Cal.App.2d 385, 389 [79 P.2d 419].) ▓▓ Popejoy's recovery against the Hannons for the negligence of Sugarman, who would be liable to them, is therefore an indirect recovery of damages from the plaintiff's employer, whose sole liability is that imposed by the provisions of the Workmen's Compensation Act. This is contrary to the purpose and public policy of that statute. (See *Baugh* v. *Rogers, supra,* at pp. 218-219.)

▓▓ However, the Hannons did not plead their special relationship to Sugarman as a defense to the action. Under these circumstances, the question is whether the employment relationship constitutes an affirmative defense which must be pleaded by the defendant employer.

▓▓ It has been stated, as a general rule, that "The burden of proof is upon the employer to prove that he has complied with the Act and is subject to its terms when defending a civil action brought against him." (Campbell, Workmen's Compensation, § 1279, p. 1074.) ▓▓ And in *Butler* v. *Wyman,* 128 Cal.App. 736, 739 [18 P.2d 354], it was said, "It is a general rule that a plaintiff need not negative the fact that he is within the Act, this being an affirmative defense." The status of the plaintiff has been referred to as an affirmative defense in *Baugh* v. *Rogers, supra,* at page 204, *Moise* v. *Owens,* 96 Cal.App.2d 617, 618 [216 P.2d 22], and *Liberty Mutual Ins. Co.* v. *Superior Court,* 62 Cal.App.2d 601, 605 [145 P.2d 344].

The views expressed in these decisions are completely in accord with the provisions of the act. ▓▓ In all cases where the conditions of compensation do not concur, the liability of the employer is governed by the law of negligence. (Lab. Code, § 3602.) It is only where the conditions specified by the act exist that recovery of compensation is the exclusive remedy. (Lab. Code, § 3601.)

▓▓ An employer who contends that he is one of a class of persons protected from an action at law by the Workmen's Compensation Act must plead and prove the conditions necessary to bring himself within the statute. The employee

is pursuing a common law remedy which existed before the enactment of the statute and which continues to exist in cases not covered by the statute. It is incumbent upon the employer to prove that the Workmen's Compensation Act is a bar to the employee's ordinary remedy. ▮ There is no legal reason why this rule should not apply to Popejoy's action as well as to one by an employee against his own employer.

The judgment and the order denying the motion for judgment notwithstanding the verdict are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Schauer, J., concurred in the judgment.

Appellants' petition for a rehearing was denied June 7, 1951.