[Civ. No. 9817. Third Dist. May 24, 1960.]

WILLIAM L. WELBORN, Respondent, v. DALZELL RIGGING COMPANY (a Corporation), Appellant.

Edward A. Friend for Appellant.

Panattoni, O'Connor & Farrell and Gloyd T. Clowdus for Respondent.

WARNE, J. pro tem.*—Dalzell Rigging Company has appealed from the judgment in favor of respondent in an action brought by respondent to recover for injuries allegedly caused by the negligence of an employee of the rigging company. It also appeals from the order of the court denying its motion for judgment notwithstanding the verdict.

Respondent was employed as a carpenter by George A. Fuller Construction Company, a general contractor, in the construction of rocket testing revetments on the grounds of the Douglas Aircraft Corporation installation at Nimbus. Essentially the operation consisted of the construction of a concrete wall. Forms to contain the concrete were constructed of prefabricated 30-inch by 30-inch metal sections. It was respondent's job to install these metal sections. An occasional section was temporarily omitted in order to provide a space where a trough could be inserted by which to pour concrete

*Assigned by Chairman of Judicial Council.

into the forms. As concrete was poured up to the level of the lowest opening the trough was removed to the next higher opening, and the lower opening was then closed by one of the metal sections. Concrete was brought to the job site in trucks. The concrete was then transferred from the trucks to a bucket which was suspended from the end of a boom on a mobile crane. The crane operator in response to signals given by an employee of the general contractor then moved the boom and the bucket to a point where the concrete was needed. When the bucket was at an appropriate spot over a trough where the concrete was to be released, the concrete was released by an employee of the general contractor who pulled a rope attached to a circular metal handle which extended around the base of the bucket. The crane operator had no control over the release mechanism.

At the time of the accident respondent was working on a narrow platform installing one of the metal form sections to close an opening through which the concrete had already been poured. Directly above respondent the trough had been inserted into a higher opening in preparation for pouring more concrete. The crane operator in response to signals given him by an employee of the contractor moved a bucket of concrete directly over the trough and over respondent even though he had a clear view of respondent, saw him and knew he was in a dangerous position. No signal or warning was given respondent, and the evidence is conflicting as to whether or not the crane was equipped with any signal device. While the bucket was suspended over the trough, an unidentified employee of the contractor tripped the release mechanism, causing the concrete to pour from the bucket into the trough which then broke loose from the form. The trough fell upon respondent and fractured his leg.

The crane was owned by appellant rigging company. It supplied the crane, the operator and an oiler to the general contractor for a fixed sum per hour. At the conclusion of work each day the general contractor, or one of its representatives, signed a "Daily Crane Report" made out by the oiler on the crane. It showed the number of hours the crane was operated. These reports were prepared in triplicate on forms furnished by the appellant. One of the duplicate copies was furnished to the general contractor. The following was printed at the bottom of the form: "Work done subject to terms on the reverse hereof . . . ." On the reverse side of the form was printed: "It is distinctly understood and agreed that the sole function of Owner is to furnish equipment and/or

operators for the use of Customer and that such equipment and operators shall be under the exclusive direction, supervision, and control of Customer during performance of this Work Order.''

Incidentally, the record shows that George A. Fuller Construction Company, respondent's employer, carried workmen's compensation insurance; that respondent was entitled to its benefits, pursued his remedy against the company as his employer under the workmen's compensation provision of division IV of the Labor Code, and received compensation from its carrier. By this action respondent sought additional recovery for the same injury from appellant. A lien exists against any judgment for plaintiff-respondent in favor of Pacific Indemnity Company, the workmen's compensation insurance carrier.

Appellant first contends that no act of the crane operator was the proximate cause of this accident for the following reasons: (1) The cause of the accident was the defectively installed trough; (2) The release of the concrete was caused by a person employed by and under the control of the general contractor; and (3) In any event negligence on the part of the crane operator was too remote to be a legal cause of the accident.

We do not agree with appellant. It is true that a contributing cause of the accident was the flimsy and inadequate construction of the particular trough used on the job and the fact that the trough was fastened to the form solely by two pieces of pin rod, or Number 9 wire, one-fourth inch in diameter which were inadequate to carry the load. The evidence shows that at the time of the accident the rod pulled out causing the trough to fall and hit respondent. However, the crane operator being aware of the danger to which respondent was exposed positioned a load of concrete over respondent to be released. The only precaution he took, according to his own testimony, was to hold the load of concrete at a higher level than usual. To the contrary there is competent testimony that the bucket was placed by the crane operator at the customary level for releasing the concrete. The evidence further shows that the crane operator did nothing to give notice to the employee who released the concrete from the bucket that respondent was in a position of peril. There is no evidence that the employee who released the concrete knew of the perilous position occupied by respondent or that the crane operator had any cause to believe that he was so informed. Further, no warning signal was

sounded or given just before the beginning of the operation which resulted in respondent's injury. Title 8 of the California Administrative Code, article 9, section 1570, provides in part as follows:

"(c) . . . Mobile cranes and boom-type excavators shall be equipped with a warning signal device that may be heard above the usual noises on the site. A warning shall be sounded just before the beginning of operations and just before the travel mechanism is used.

"(f) Overhead Loads. Operations shall be conducted and the job controlled in a manner that will avoid exposure of employees to the hazard of overhead, suspended loads. . . ."

█ Violation of a safety order constitutes negligence *per se* and the question of whether such negligence proximately contributed to respondent's injury was one of fact for the jury. (*Armenta* v. *Churchill,* 42 Cal.2d 448, 455 [267 P.2d 303], citing cases.)

█ It is true the release of the concrete was caused by an employee under the control of the general contractor, but it was appellant's negligence that placed the bucket in a position over the respondent so that the concrete could be released therefrom. Such an intervening act could have been foreseen by a reasonably prudent person.

█ ". . . The rule is that if the intervening act might have been reasonably foreseen, it does not break the chain and the defendant is liable; but if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is a *superseding cause,* which breaks the chain, and the defendant is not liable. . . ." (1 Witkin, Summary of California Law, 757.)

The case of *Towt* v. *Pope,* 168 Cal.App.2d 520 [336 P.2d 276], cited by appellant in support of its position that the positioning of an overhead load with a crane cannot be a proximate cause of injury to a workman beneath, is distinguishable from the instant case. In that case the court said at page 532: "The record is devoid of any evidence that working near overhead cranes, under the circumstances described, is 'extremely hazardous and dangerous,' exposed an employee to 'unreasonable risk and harm' or constituted a danger; . . . ." Nor was there any showing of a violation of a safety order. █ In the instant case the evidence is that there was a foreseeable hazard and risk of harm by positioning the bucket of concrete over the place where respondent was working at the time of the accident, and also evidence of a violation of a safety order.

274

Appellant next contends that the crane operator was not the servant of appellant at the time of the accident. This contention is based primarily upon the statement printed on the "Daily Crane Report" that the work was done subject to the terms on the reverse side as hereinabove quoted. Again we do not agree with appellant.

One G. V. Cummings, manager of the appellant, Dalzell Rigging Company, testified that he was called at his office on the telephone by the manager or general superintendent for the George A. Fuller Construction Company and "asked if I could provide them with a crane to do various work out there, including pouring concrete and any other things they wanted to use it for"; and that he told them, "Yes, we had a crane available." He further testified as follows: "Q. And what arrangements did you make with them for providing them with a crane? A. They ordered the crane for a certain day and a certain time, so we had the crane crew take the crane out to the job and report to them. . . . Q. Did you give the operator any instructions concerning what he was supposed to do after reporting to the man in charge of the job? A. No." He further testified that he did not do anything in any way to direct their operation; that he had no control over that; that the rental charge for the crane was $19.25 an hour, fully operated and maintained; that the $19.25 an hour included the wages of the two men who are the crane crew, plus the fuel and repairs; that the "Daily Crane Report" is used for billing the customer when he is through with the crane; that there was nothing said as to who was to have the direction, supervision and control of the operator or the oiler of the crane; that there was nothing said about who would be responsible in the event there was an accident; that nothing which appears on the back of the "Daily Crane Report" was discussed with Mr. Reed or with anyone else.

The record further shows that at the time of the accident appellant was paying the operator's wages; that the operator's job was a specialized job requiring special skill; that the appellant had the exclusive right to discharge him; that the operator exercised his own judgment ninety per cent of the time as to safe conditions in which to operate appellant's machinery; and that when any other question arose as to safe or practical procedure in the use of the equipment, the operator went to the appellant's superintendent rather than the general contractor for his instructions.

■ As stated in *Peters* v. *United Studios, Inc.*, 98 Cal. App. 373, 378 [277 P. 156]:

"There are certain well-settled rules of law applicable to this class of cases.

"1. 'When a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer insofar as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner of the instrumentality.' (*Billig* v. *Southern Pacific Co.*, 189 Cal. 477, 485 [209 P. 241, 244]; 1 Labatt on Master and Servant, 2 ed., p. 176.)

■ "2. However the general employer may lend his servant together with an instrumentality in such a manner as to render the person to whom the servant is loaned the special master *pro hac vice* and hence relieve the general employer from liability for the servant's negligence in the operation of the instrumentality. (*Burns* v. *Jackson*, 59 Cal.App. 662 [211 P. 821]; *Linstead* v. *Chesapeake & O. Ry. Co.*, 276 U.S. 28 [72 L.Ed. 319, 48 S.Ct. 241].)

"3. But 'to escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation.' (*Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610, 616 [55 A.L.R. 1258, 285 P. 88, 91]; *Standard Oil Co.* v. *Anderson*, 212 U.S. 215 [53 L.Ed. 480, 29 S.Ct. 252].)

■ "4. 'It is the right to exercise control rather than the mere fact of its exercise which is decisive.' (*Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224 [263 P. 799, 801]; *Bartolomeo* v. *Charles Bennett Cont. Co.*, 245 N.Y. 66 [156 N.E. 98]; 39 C.J., pp. 1274, 1275.)"

■ Applying these rules to the evidence above summarized, it is clear to us that the jury was fully justified in

impliedly finding that there was no contract existing between the appellant and the George A. Fuller Construction Company whereby appellant relinquished to George A. Fuller Construction Company full control of the crane and the two operators thereof. It could reasonably be concluded that the only control exercised by the general contractor over the work done by the appellant's crane and crew was that necessary to indicate when and where the work in which they were jointly engaged was to be done.

Other points presented in the briefs require no discussion.

The judgment and the order denying appellant's motion for judgment notwithstanding the verdict are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied June 21, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 20, 1960.