[L.A. No. 31176. Feb. 19, 1980.]

ROBERT A. MARSH, Plaintiff and Appellant, v.
TILLEY STEEL COMPANY, Defendant and Respondent.

COUNSEL

Martin & Harrison, Jeffrey B. Harrison and Gerald H. B. Kane, Jr., for Plaintiff and Appellant.

John Koslov for Defendant and Respondent.

OPINION

**RICHARDSON, J.**—Plaintiff appeals from a judgment of nonsuit in his action for personal injury damages, and alleges that the trial court misapplied the law involving special employment. The case involves the interplay between tort and workers' compensation remedies within the relationship of special and general employers and employees. ■ We will conclude that, where the negligence of a special employee injures another of the special employer's workers, the victim is not barred by workers' compensation law from suing the general employer of the tortfeasor in negligence on respondeat superior principles. The general employer is liable in tort if, at the time of the injury, it retained total or partial concurrent control over the tortfeasor's work. In this case the evidence presented to the trial court permits the inference that the tortfeasor remained wholly or partially under the general employer's control at the time of the accident. The judgment of nonsuit will therefore be reversed.

Maxwell Construction (Maxwell) was the general concrete contractor in the construction of the Foothill Freeway in Pasadena. Maxwell employed plaintiff as a truck driver and laborer. Defendant Tilley Steel Company was a subcontractor, responsible for the installation of reinforced steel in Maxwell's concrete work. Wynglarz, a skilled crane operator, was a regular employee of defendant.

The efficient completion of the freeway project required a close co-ordination by Maxwell and defendant on utilizing the necessary supplies and labor. Accordingly, during the course of construction the respective superintendents of Maxwell and defendant orally agreed that when either party required the use of a particular kind of crane but did not have one available, the necessary crane and operator could be borrowed from the other party. The borrowing arrangement was temporary only, usually during a period of half of a day or less, and was to be uncompensated. Under the agreement, personnel would not be administratively shifted between employers, each company's employees continuing to report to their own respective supervisors and remaining on the payrolls of their regular employers. The affected equipment retained the insignia and remained wholly the property of its owner.

The informal agreement did not specify the degree of control to be exercised by the employer, either general or special, over a borrowed crane operator's work. It was apparently understood by the parties, however, that the borrowing employer would advise the operator of the particular work results to be achieved, but, as is common in such cases, the specific details of positioning and controlling the crane were left to the judgment of the skilled operator. By custom, an operator often relies on informational hand signals from nearby workers in order to make the necessary decisions regarding operation of the crane and safety may require such signals. Wynglarz had performed work for Maxwell on a number of occasions under similar conditions.

On February 5, 1975, Wynglarz reported to his usual supervisor and spent the morning working for defendant. During the afternoon, on his supervisor's orders, Wynglarz moved his truck-mounted crane to a Maxwell work site in order to assist Maxwell in the placement of concrete forms and certain equipment called "curing rugs."

Upon arriving at the site, Wynglarz commenced working with plaintiff and a Maxwell foreman. After removing the rugs, the 3 men, using the crane, then loaded the concrete forms, weighing 1,400 pounds each, on the Maxwell truck operated by plaintiff, which then took the forms to their destination, and preparations were made to unload them. When Wynglarz had positioned the crane and its boom for this unloading operation, plaintiff then attached the load of forms to the boom and jumped off his truck to signal Wynglarz where the load should be set down. Before plaintiff could begin signalling, however, he noticed the sound of grating metal. He then observed the boom swinging overhead

and the forms sliding off the stack toward him. Plaintiff dove for safety under his truck, but one of the forms struck his leg seriously and permanently injuring him.

At the jury trial of plaintiff's subsequent negligence action against defendant, the court granted defendant's motion for nonsuit, holding that because Maxwell exercised control over Wynglarz the latter had become a special employee of Maxwell at the time of the accident, plaintiff as a Maxwell employee was limited to his workers' compensation remedy against Maxwell and had no remedy against Tilley, Wynglarz' general employer.

In resolving the controversy, we examine the status of a special employee and the applicable workers' compensation laws.

### 1. *Wynglarz' Employment Status*

■ When an employer—the "general" employer—lends an employee to another employer and relinquishes to a borrowing employer all right of control over the employee's activities, a "special employment" relationship arises between the borrowing employer and the employee. During this period of transferred control, the special employer becomes solely liable under the doctrine of respondeat superior for the employee's job-related torts. (*Welborn v. Dalzell Rigging Co.* (1960) 181 Cal.App.2d 268, 275 [5 Cal.Rptr. 195]; *Doty v. Lacey* (1952) 114 Cal.App.2d 73, 78 [249 P.2d 550].)

■ The special employment relationship and its consequent imposition of liability upon the special employer flows from the borrower's power to supervise the details of the employee's work. Mere instruction by the borrower on the result to be achieved will not suffice. Moreover, California courts have held that evidence of the following circumstances tends to negate the existence of a special employment: The employee is (1) not paid by and cannot be discharged by the borrower, (2) a skilled worker with substantial control over operational details, (3) not engaged in the borrower's usual business, (4) employed for only a brief period of time, and (5) using tools and equipment furnished by the lending employer. (*Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 176-177 [151 Cal.Rptr. 671, 588 P.2d 811]; *McFarland v. Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 705 [343 P.2d 923]; *Welborn, supra,* 181 Cal.App.2d at p. 275; *Doty, supra,* 114 Cal.App.2d at

p. 78.) Additionally, where the servants of two employers are jointly engaged in a project of mutual interest, each employee ordinarily remains the servant of his own master and does not thereby become the special employee of the other. (*Moss* v. *Chronicle Pub. Co.* (1927) 201 Cal. 610, 613, 616 [258 P. 88, 55 A.L.R. 1258]; *Woodall* v. *Wayne Steffner Productions* (1962) 201 Cal.App.2d 800, 811 [20 Cal.Rptr. 572].)

█ Defendant argues that the special employment issue was properly decided on the motion for nonsuit, because the relevant facts are essentially undisputed. █ However, as we recently affirmed in *Kowalski, supra*, special employment is most often resolved on the basis of "reasonable *inferences* to be drawn from the circumstances shown." Where the evidence, though not in conflict, permits conflicting inferences, "'. . . the existence or nonexistence of the special employment relationship barring the injured employee's action at law is generally a question reserved for the trier of fact.'" (23 Cal.3d at p. 175, italics added; see also *Miller* v. *Long Beach Oil Dev. Co.* (1959) 167 Cal. App.2d 546, 550 [334 P.2d 695].)

█ Here defendant loaned a crane and its skilled operator for less than a day to complete tasks of mutual interest to defendant and Maxwell. Wynglarz, the crane operator, remained on defendant's payroll; there was evidence that, though Maxwell could request a substitute operator, it could not discharge Wynglarz. The record further suggests that, while Wynglarz might rely on informational signals, he retained unlimited discretion to operate the crane as he deemed necessary to achieve the results Maxwell desired. The evidence permits the inference that Wynglarz was simply acting under defendant's orders to do a specific task for Maxwell. Hence, there was ample basis upon which a jury might reasonably have concluded that Wynglarz was not Maxwell's special employee when the accident occurred, but remained solely the employee of defendant. We do not hold that a jury necessarily must have so found but that it may have so determined. Under such circumstances, defendant would, on a respondeat superior basis, remain liable for Wynglarz' job-related negligence, and the granting of a nonsuit was, accordingly, improper.

In so holding, we reject defendant's suggestion that in tort actions based upon the respondeat superior theory our recent *Kowalski* test be replaced with an analysis which focuses solely on the question of whose business the tortfeasor was about at the time of the accident. (See *Strait* v. *Hale Constr. Co.* (1972) 26 Cal.App.3d 941, 948-949 [103

Cal.Rptr. 487].) Defendant urges that this test, sometimes called the "whose business" analysis, best implements the "risks of the enterprise" principle which we have said is the main justification supporting the respondeat superior doctrine. (See *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988].)

We disagree. Among potentially liable employers, those who have the right to control the employee's activities at any given time are in the best position to predict, evaluate, absorb, and reduce the risk that these activities will injure others. In *Kowalski* we recognized the relevance of a "whose business" analysis in determining which employer or employers had *control* of the tortfeasor at the time of injury. (23 Cal.3d at p. 177.) Used in isolation, however, the "whose business" test offers little hope of an improved risk allocation, and, further, has been criticized as "ambiguous and sterile," implying that only one employer may be simultaneously served. (Comment, *Borrowed Servants and the Theory of Enterprise Liability* (1967) 76 Yale L.J. 807, 811.) Many of defendant's authorities demonstrate its semantic emptiness by using the "whose business" and "right to control" phraseology interchangeably. (See, e.g., *Denton* v. *Yazoo & M. V. R. Co.* (1932) 284 U.S. 305, 309 [76 L.Ed. 310, 312, 52 S.Ct. 141]; *The Standard Oil Co.* v. *Anderson* (1909) 212 U.S. 215, 221 [53 L.Ed. 480, 483-484, 29 S.Ct. 252]; *McCollum* v. *Smith* (9th Cir. 1964) 339 F.2d 348, 351-352.)

In any event, in the matter before us, defendant fares no better under the "whose business" standard than under the "control" test. Defendant suggests that an employee must be deemed about the business of any employer who profits by the employee's activities. Here, a jury could conclude that defendant obtained the requisite benefit by loaning Wynglarz to Maxwell, thereby securing reciprocal borrowing rights and contributing to joint progress in the freeway project. (Cf., *Hinman, supra*, 2 Cal.3d at p. 962.)

The evidence is susceptible of an inference that no special employment relationship arose between Wynglarz and Maxwell. The trial court therefore erred in granting nonsuit. On any retrial, however, we stress that the jury need not find that Wynglarz remained *exclusively* defendant's employee in order to impose liability on defendant. Facts demonstrating the existence of a special employment relationship do not necessarily preclude a finding that a particular employee also remained under the partial control of the original employer. Where general and special employers share control of an

employee's work, a "dual employment" arises, and the general employer remains concurrently and simultaneously, jointly and severally liable for the employee's torts. (*Strait* v. *Hale Constr. Co., supra,* 26 Cal.App.3d 941, 950; *Hiner* v. *Olson* (1937) 23 Cal.App.2d 227, 230-231 [72 P.2d 890, 73 P.2d 945]; *Rosander* v. *Market Street Ry. Co.* (1928) 89 Cal. App. 721, 735 [265 P. 536]; see *Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d at p. 175; *McFarland* v. *Voorheis-Trindle Co., supra,* 52 Cal.2d at p. 702.)

### 2. *Workers' Compensation Statutes*

■ Defendant argues that if Wynglarz was a dual employee of both Maxwell and defendant at the time of the accident, plaintiff is limited by statute to his statutory compensation remedy against Maxwell alone thereby barring any tort action against either or both employers.

Defendant is incorrect. Under the workers' compensation law, recovery of statutory benefits is an injured employee's sole remedy against "the employer or against any other employee of the employer acting within the scope of his employment. . . ." (Lab. Code, § 3601, subd. (a); all statutory references are to that code unless otherwise indicated.) However, this statutory restriction does not affect the employee's rights to tort damages from persons with whom the employee has no employment relationship. (§ 3852; *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641].)

Defendant contends that, as a special employee of Maxwell, Wynglarz would become plaintiff's fellow employee, and because Wynglarz would thereby be immune from liability to plaintiff under section 3601, subdivision (a), and because defendant's liability for Wynglarz' acts is vicarious, defendant should thereby reap the benefit of Wynglarz' statutory immunity.

The identical argument was recently and persuasively rejected in *Campbell* v. *Harris-Seybold Press Co.* (1977) 73 Cal.App.3d 786 [141 Cal.Rptr. 55]. ■ The *Campbell* court concluded that, because a coemployee's statutory immunity defense did not determine the merits of the claim, i.e., the negligence of the coemployee, the statutory defense was personal and could not thereby absolve the coemployee's general employer from liability for such negligence on a theory of respondeat superior. (*Id.,* at p. 791; *Cardenas* v. *Ellston* (1968) 259 Cal.App.2d 232, 238 [66 Cal.Rptr. 128]; see *Baugh* v. *Rogers* (1944)

24 Cal.2d 200, 214 [148 P.2d 633, 152 A.L.R. 1043]; compare *Freeman* v. *Churchhill* (1947) 30 Cal.2d 453, 461 [183 P.2d 4] [invoking a contrary rule where employee's defense does resolve the merits of plaintiff's claim].)

The reasoning of *Campbell* is sound. Where the tortfeasor is not the plaintiff's employer or coemployee, the statutes by necessary implication reserve for plaintiff his tortious remedy against defendant. Moreover, general respondeat superior principles seek to place the cost of work-related negligence on those enterprises the actions of which have produced the negligence risk. (*Hinman* v. *Westinghouse Elec. Co., supra*, 2 Cal.3d at pp. 959-960.) This policy would be defeated by extending to an employer the benefit of a technical defense reserved solely for the employee. As *Campbell* noted, a defendant has no workers' compensation responsibility to a plaintiff who is not its employee. Accordingly, defendant's argument would relieve defendant from its normal respondeat superior liability, while at the same time giving no accompanying benefit to the workers' compensation system. (73 Cal. App.3d at p. 791.) The result in the case before us is that if there is no tort liability of defendant to plaintiff because Wynglarz is deemed plaintiff's fellow employee, and there is no workers' compensation remedy because plaintiff is not defendant's employee, the defendant effectively immunizes itself from any liability whatever.

■ Defendant urges that a suit against it would indirectly strip Wynglarz of his immunity, because defendant, liable only upon respondeat superior principles, would retain its right of indemnity against the actual tortfeasor, Wynglarz. It is true that in *Popejoy* v. *Hannon* (1951) 37 Cal.2d 159 [231 P.2d 484], we concluded that a third party is immune from an employee's action if the third party's right of indemnity would deprive the indemnitor of an immunity conferred by the workers' compensation law. (Pp. 171-173.)

However, section 3601, subdivision (d), enacted after *Popejoy* was decided, expressly provides that, with irrelevant exceptions, an employee "shall [not] be held liable, directly or indirectly, to his employer, for injury or death of a coemployee...." Because defendant's liability, if any, is premised on its status as Wynglarz' employer, defendant is statutorily precluded from suing Wynglarz for indemnity. Hence, the rationale of *Popejoy*, a fear that the injured party's suit would produce indirect liability for an immune party, is inapplicable here. No reason appears to foreclose the victim's right of action.

Finally, defendant urges that plaintiff has conceded before the trial court that he is limited to workers' compensation benefits if Wynglarz was "a" special employee of Maxwell. In defendant's view, plaintiff thereby waived any contention that defendant's tort liability may be premised on Wynglarz' "dual employment." However, as previously noted, we conclude that a jury could have found Wynglarz to have remained *solely* in defendant's employ. For that reason alone a nonsuit was improper.

The judgment is reversed.

Tobriner, J., Mosk, J., Clark, J., and Manuel, J., concurred.

**NEWMAN, J.**—I concur in the reversal of the judgment. I believe, though, that the aims of California Rules of Court, rule 29(a)(1) would more effectively have been furthered had this cause been transferred to the Court of Appeal with appropriate citations. (Cf. Scott & Wegner, *Case Dispositions by the California Supreme Court: Proposed Alternatives* (1979) 67 Cal.L.Rev. 788, 806.)

Bird, C. J., concurred.