166 F.3d 343
 HANOVER INSURANCE COMPANY; Federal Insurance Company,
Plaintiffs-Appellees,
v.
THE WALT DISNEY COMPANY, Defendant/Cross-Claimant/Appellant,
and
GENERAL ELECTRIC CAPITAL AUTO LEASE, INC.; Aetna Casualty &
Surety Co.; Young Eun Kang, Defendants,
and
Jane GOOTNICK; Jim Henson Productions, Inc., D
efendants/Cross-Defendants.
HANOVER INSURANCE COMPANY; Federal Insurance Company,
Plaintiffs/Appellees,
v.
WALT DISNEY COMPANY, The Walt Disney company, Defendant/Cross-Claimant,
and
GENERAL ELECTRIC CAPITAL AUTO LEASE, INC.; Young Eun Kang, Defendants,
and
AETNA CASUALTY & SURETY CO., Defendant/Appellant,
and
Jane GOOTNICK; Jim Henson Productions, Inc., D
efendants/Cross-Defendants.
 No. 97-55330, 97-55368.
DC No. CV-94-04873-RSWL.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1998.
Decided Dec. 8, 1998.
 
 Appeal from the United States District Court for the Central District of California Ronald S.W. Lew, District Judge, Presiding.
 Before CANBY and KLEINFELD, Circuit Judges, and SCHWARZER,[1] District Judge.
 MEMORANDUM*
 * The facts of this dispute are known to the parties and will not be set forth here. The district court held that Disney and its excess insurance carrier Aetna were liable for all damages and expenses arising from the accident under the provisions of Cal. Ins.Code § 11580.9(d) (West 1988). That section provides in pertinent part:
 [W]here two or more policies affording valid and collectible insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.
 (Emphasis added). The district court held that Disney had, in effect, one policy providing $4 million in coverage, of which Disney provided the first $2 million in coverage and Aetna the next $2 million. The policy, in the district court's view, adequately described the vehicle involved in the accident, and was therefore primary.
 The district court mischaracterized Disney's arrangement with Aetna, which led to a misapplication of § 11580.9(d). Aetna's policy was an excess indemnity policy, and was so denominated. Disney was responsible for the first $2 million of liability, under the retained limit, before Aetna's coverage was triggered. Aetna's policy included no duty to defend. Disney did not insure anyone; it simply went without insurance for the first $2 million of liability.
 Section 11580.9(d) by its terms can have no application to Disney. It applies where two or more policies of insurance apply to the same vehicle causing a liability. Disney is not an insurer and has no policy of insurance with regard to the first $2 million of its liability. The legislative purpose of § 11580.9 was to establish "the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply. " Cal. Veh.Code § 11580.8 (emphasis added). Disney accordingly is not within the scope of § 11580.9(d). See Metro U.S. Services, Inc. v. City of Los Angeles, 96 Cal.App.3d 678, 158 Cal.Rptr. 207, 208-09 (Cal.Ct.App.1979) (city that self-insures its vehicles is not issuer of a "policy" and is therefore not subject to § 11580.9(b)). Because Disney has issued no policy, it obviously has issued no policy rating or describing a vehicle within the meaning of § 11580.9(d). See Enterprise Rent-A-Car Co. v. Workmen's Auto Ins. Co., 58 Cal.App.4th 1543, 68 Cal.Rptr.2d 725 (Cal.Ct.App.1997) (self-insuring rental car company that makes required cash deposit that does not describe or rate vehicles is not governed by § 11580.9)).
 Between Hanover/Federal and Disney, then, § 11580.9(d) has no application. In that event, "the driver's policy is primary under Vehicle Code sections 17152 and 17153."[2] Enterprise Rent-A-Car, 68 Cal.Rptr.2d at 729. As primary insurer, Hanover and not Disney had the duty to defend the Kang claim. See Ticor Title Ins. Co. v. Employers Ins. of Wausau, 40 Cal.App.4th 1699, 48 Cal.Rptr.2d 368, 373 (Cal.Ct.App.1995) (primary insurer has duty to defend).
 II
 Aetna also was not subject to § 11580.9(d), because its policy was not triggered until the insured loss exceeded $2 million. The total settlement paid to Kang by Hanover and Federal was $1,925,000. Defense costs pushed the amount over $2 million, but Aetna had no duty to defend Henson and Gootnick, and Hanover did. Defense costs are not covered by Aetna's policy unless they were incurred by Aetna. Aetna's policy, which rendered it liable to indemnify for "Ultimate Net Loss" above $2 million, provided in § 4.13:
 "Ultimate Net Loss" means the sum actually paid or payable in cash in the settlement or satisfaction of any claim or suit for which the insured is liable either by adjudication or settlement with the written consent of the company, inclusive of all loss expenses and legal expenses including attorneys' fees, court costs and interest on any judgement or award Aetna Casualty incurred, after making proper deduction for all recoveries and salvages collectible.
 (Emphasis added). Hanover and Federal contend that the italicized words ought not to be read to refer to attorneys' fees, but a natural reading would make them applicable to the entire clause beginning "including." The italicized words are part of an endorsement that revised the section by adding only the italicized words, leaving all else unchanged. The only likely purpose for the amendment was to render the "Ultimate Net Loss" clause consistent with the absence of a duty to defend, and with § 6.9 of the policy, which provides:
 Aetna Casualty will pay, with respect to any claim or suit Aetna Casualty chose to defend arising out of bodily injury or property damage covered by this insurance, reasonable and necessary legal fees and other expenses which are incurred by or on behalf of the insured in any investigation, adjustment, settlement or litigation of any such suit (excluding all salaries of your employees, officers and directors and all your office expenses).
 (First emphasis added; others original). In light of all of the provisions of the policy, Disney would have understood that defense costs were not covered unless Aetna elected to defend. Indeed, a Disney executive stated without contradiction that he did not understand Aetna's policy to cover defense costs.
 Aetna's policy, therefore, simply could not cover the settlement paid Kang by Hanover and Federal, which fell below its $2 million floor. Section 11580.9(d) provides that, where "two or more policies affording valid and collectible liability insurance " apply to the same vehicle causing liability, the one that rates or describes the vehicle shall be primary. Because the liability involved does not trigger Aetna's coverage, it is not "collectible" insurance. See Hellman v. Great American Ins. Co., 66 Cal.App.3d 298, 136 Cal.Rptr. 24, 28 (Cal.Ct.App.1977) ("[I]nsurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted."). Similarly, Aetna's policy would not have been available to Disney even if Disney had been liable for the settlement Hanover and Federal made with Kang. Nor is Aetna's policy one of two which "cover the same loss," within the meaning of the public policy statement of § 11580.8. The district court accordingly erred in subjecting Aetna to liability under § 11580.9(d).[3]
 III
 Disney was liable as owner/lessee of the vehicle under Cal. Veh.Code § 17150, but that liability was limited to $15,000 personal injury and $5,000 property damage in the absence of an employment relationship. Disney settled its entire liability to Kang for $50,000, and that settlement was declared to be in good faith by the California state court. That good-faith settlement precludes any equitable or implied obligation of indemnity on the part of Disney for Hanover and Federal's settlement of their liability to Kang. See Cal. Civ. P.Code § 877.6(c); Bay Dev., Ltd. v. Superior Court, 50 Cal.3d 1012, 269 Cal.Rptr. 720, 791 P.2d 290, 293 (Cal.1990); Far West Fin. Corp. v. D & S Co., 760 P.2d 399, 412 (Cal.1988).
 IV
 In the original letter agreement between Disney and Henson Associates, Inc., Henson agreed "to indemnify and save harmless Producer [Disney] ... from and against any liabilities... arising in connection with ... any acts or omission by Company [Henson], Artist, or any of Company's officers or employees that result in or contribute to ... any injuries to or death of Artist or any other person...." In the Construction Agreement, both Disney and Henson agreed to hold each other harmless from liability for the negligent acts of their employees. Hanover and Federal and Henson contend that there may have been other arrangements under which Gootnick worked, but they have offered nothing that would vary the terms of these express agreements. Because we hold below that Gootnick was not an employee of Disney, Disney is entitled to recover from Henson the $50,000 it paid in good faith to settle its Kang liability.[4] The good faith settlement made with Kang by Hanover and Federal would cut off equitable claims of reimbursement, but not an express indemnity claim. See Bay Dev., Ltd., 269 Cal.Rptr. 720, 791 P.2d at 293.
 V
 As an alternative means of supporting the district court's judgment, Hanover and Federal and Henson contend that Disney impliedly contracted to provide primary insurance for the Gootnick vehicle. However, Disney's good faith settlement with Kang allows enforcement of only express, not implied agreements creating an obligation of indemnity or contribution. Id. at 293, 302; Far West Fin. Corp., 760 P.2d at 412. Hanover and Federal and Henson contend that Disney assumed a like obligation in its express agreements with Henson. Nothing in the record to which those parties cite would permit a trier of fact to find an agreement to insure. The deposition testimony falls far short of establishing such an agreement, and the cited contract mentions only errors and omissions and general liability insurance, not auto insurance. No enforceable agreement required Disney to provide auto insurance for Gootnick.
 VI
 Hanover and Federal and Henson contend that Disney is estopped to deny primary coverage of the Kang liability and to rely on the indemnity provisions, because Disney originally provided Waimey to represent Disney, Henson and Gootnick. Waimey engaged in discussions with Kang, extended the period of limitations, and conferred with the parties. He withdrew from representation of Henson and Gootnick in August 1993. The difficulties with the estoppel contention are, first, that Disney is not an insurer and, second, that there has been no showing sufficient to permit a trier of fact to find detrimental reliance or prejudice. See Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1559-60 (9th Cir.1991). The parties have not shown that they were in any different position with regard to the Kang liability after Waimey ceased representing them than they would have been if Disney had refused representation from the start.
 VII
 The final point urged by Hanover and Federal and Henson is that Gootnick was a dual employee, employed by Disney as well as Henson. Disney argues with considerable force that there was no evidence of control by Disney over Gootnick's work, and that both the formal and actual arrangements indicated that she worked only for Henson. The district court held, before its final judgment made the point immaterial, that there was a triable issue of fact concerning whether Gootnick was a dual employee. We, however, find nothing in the record to support this conclusion.
 Hanover and Federal and Henson cite to deposition testimony as raising, at the least, a triable issue of fact concerning Gootnick's employment relation with Disney. A thorough reading of this evidence, however, supports Disney. Henson, and Henson alone, hired, supervised and paid Gootnick. Henson had the sole authority to discharge Gootnick. Gootnick merely worked for a limited time at Disney's facilities on a Disney production. This circumstance does not make her a Disney employee. See Marsh v. Tilley Steel Co., 26 Cal.3d 486, 162 Cal.Rptr. 320, 606 P.2d 355 (1980) (special employment status negated where skilled employee is not paid by and cannot be discharged by the borrower). Although Disney retained artistic control over the result of the Henson contract, there is no evidence in the record that Disney possessed or exercised control over the manner in which Gootnick performed her work. See McFarland v. Voorheis-Trindle Co., 52 Cal.2d 698, 705, 343 P.2d 923 (1959) ("The paramount consideration appears to be whether the alleged special employer exercises control over the details of the work"). There is thus no evidence in the record sufficient to permit a rational trier of fact to find that Gootnick was an employee of Disney.
 VIII
 The district court erred in holding Disney and Aetna to be primary insurers under Cal. Ins.Code § 11580.9(d). Disney's good faith settlement with Kang protects it from equitable or implied indemnity claims. No evidence raises a triable issue of fact that Henson was an employee of Disney. Henson accordingly is liable to indemnify Disney for its $50,000 settlement. No implied or express promise by Disney to insure is supported by this record, nor is an estoppel against Disney. There being no triable issues of fact remaining on any point, we reverse the judgment of the district court and remand for entry of summary judgment in favor of Disney.
 REVERSED AND REMANDED.
 
 
 
 [1]
 The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a) and Ninth Cir. R. 34-4
 
 
 [2]
 Section 17152 provides that in an action against an owner of a vehicle for acts of the operator, the operator must be joined as a defendant and upon judgment, recourse must first be had against the operator. Section 17153 subrogates an owner to the rights of the victim against the operator for any recovery against the owner
 
 
 [3]
 Our disposition of this issue renders it unnecessary for us to resolve the disputed question whether Aetna's policy rated or described the vehicle involved in the accident, for purposes of § 11580.9(d)
 
 
 [4]
 In its original order, the district court had awarded Disney $30,000, the amount by which Disney's settlement payment exceeded its statutory liability of $20,000. Disney is entitled to recover the whole amount of any liability caused by an employee of Henson, however. The fact that the liability is statutory does not mean that it was not caused by an employee of Henson; it thus falls within the express indemnity clauses