No. 19,077.

THE COLORADO AND SOUTHERN RAILWAY COMPANY, ET AL. *v.* DUFFY STORAGE AND MOVING COMPANY.
(361 P. [2d] 144)

Decided January 30, 1961. Rehearing denied May 1, 1961.

Mr. C. W. KROHL, Mr. W. L. PECK, Mr. J. C. STREET, for plaintiff in error Colorado & Southern Railway Company.

Messrs. GRANT, SHAFROTH, TOLL, CHILSON & McHENDRIE, Mr. PETER J. CROUSE, for plaintiff in error The Atchison, Topeka and Santa Fe Railroad Company.

Mr. RICHARD J. BERNICK, Messrs. McCOMB, ZARLENGO & MOTT, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties appear here in reverse order of their appearance in the trial court. They will be referred to as they there appeared or by name when appropriate.

Plaintiff brought an action for damages to its truck, trailer, and crane resulting from the alleged negligent failure of the defendants to stop their train in time to avoid a crossing accident in Douglas County, Colorado, on the main line route between Denver and Pueblo on December 3, 1957. By their answers, defendants denied negligence and pleaded contributory negligence on the part of the plaintiff. Defendant Colorado and Southern filed a counterclaim against plaintiff for damage to its property resulting from the alleged negligence of plaintiff's agents in allowing its vehicle to become stalled on the railroad tracks. Plaintiff then interposed the defense of last clear chance to defendants' charge of contributory negligence.

From a judgment in the amount of $33,199.00 based on a jury verdict in favor of plaintiff, defendants prosecute this writ of error, contending that there was no negligence on their part, and, in any event, that the issues were not properly submitted to the jury by the instructions of the trial judge.

The crossing in question is approached from the north by a train on a wide flat curve on a slight grade. A whistle post was 1438 feet north of the crossing. The trains of defendants run in a southerly direction on the single track right-of-way involved here. There was a dispute as to whether the engineer's vision across the curve was unduly blocked by the almost flat field.

J. C. McIntosh, engineer on the train, had worked for defendant Colorado and Southern since 1915, and had served as locomotive engineer on this train, the Texas Zephyr, since 1952. According to his testimony, he was about 1500 feet from the crossing, near the whistle post, when he first saw an object at the crossing. He testified that he could not tell whether it was on the crossing or moving across it. When he was about 1000 feet from the

crossing he saw someone running down the track waving his hands. It was at that point McIntosh first applied the brakes. According to his testimony, when first he could see an object and that it was on the crossing, was when he was within 1000 or 1100 feet. He testified that as he approached the whistle post, he was not looking at the crossing, but at the track in front of him. And, it was not until he reached the whistle post that he looked ahead to the crossing.

The issues were submitted to the jury under what might be termed standard instructions on negligence and last clear chance. Defendants objected to the refusal of the trial judge to instruct the jury that the plaintiff was guilty of negligence as a matter of law by virtue of its violation of C.R.S. '53, 13-4-69, which provides that no person shall move this type of heavy equipment over a railroad crossing, without first giving notice thereof to the railroad.

█ Conceding without deciding that violation of the statute involved here would be negligence per se, nevertheless violation of a statute which would otherwise preclude a party from recovering is not conclusive if the doctrine of last clear chance is applicable, for in that case violation of the statute is not the proximate cause of the accident and a negligent plaintiff may yet recover.

█ Under the doctrine of last clear chance, as expressed by this court in *Lambrecht v. Archibald* (1949), 119 Colo. 356, 203 P. (2d) 897, at page 365, it was held that "A negligent plaintiff who has placed himself in a perilous position from which he cannot extricate himself in time to avoid an accident, may recover from a negligent defendant who is aware of plaintiff's perilous position or who, by the exercise of reasonable care, caution and vigilance, might have become aware of it, and thereafter, by the exercise of reasonable care and caution, could have averted the accident, but failed to do

so." In accord: Restatement Law of Torts, Sec. 479, Ch. 17.

Assuming in the case before us that plaintiff was negligent, the question under last clear chance is whether defendants were aware of plaintiff's peril, or should have been so aware, and by the exercise of reasonable care had a last clear chance to avoid the accident. If there is evidence to sustain such a finding by the jury, and no other matter amounting to reversible error appear in the case, we must affirm the judgment. Thus this plaintiff's negligence does not necessarily bar him from recovery. A statement in *Rosa v. Union Pacific Railroad Company* (1952), 127 Colo. 1, 252 P. (2d) 825, 826, is appropriate here. It reads:

"Counsel for defendants urge that since plaintiff's negligence was a continuing one up to the point of the collision, there was no chance for defendants to determine that plaintiff was in a position of peril, therefore the doctrine of last clear chance did not apply. As indicated above, we are not in harmony with that contention."

The facts in the present case are somewhat similar to those in *Union Pacific Railroad Company v. Ward* (1956), 230 F. (2d) 287 (10th Circ. Ct. of App.). That case arose out of a collision in Colorado between a train and a tractor and tank trailer which had stalled on a crossing. There the driver of the tractor with its trailer was guilty of negligence per se in violating a different statute (C.R.S. '53, 13-4-86). The engineer of the train testified that he observed Ward's vehicle 2000 feet from the crossing, but thought it had stopped on the side of the crossing and was waiting for the train to pass. He further testified that if the emergency brakes had been applied at that point, when he first saw the vehicle, the train could have been safely stopped before reaching the crossing, but that it was only after the train was 1000 feet from the crossing that he realized that the vehicle was on the tracks, and that the train could not be stopped

in that distance. The trial court instructed the jury that if a reasonably prudent person would have ascertained that the truck was astride the tracks when he first saw it, the failure to do so and to act accordingly, constituted negligence. "For," said the court, "to look without reasonable care and without seeing what would be plainly visible to any reasonably prudent man under these circumstances, would be the same as not looking." To the same effect is the decision in *Fabling v. Jones* (1941), 108 Colo. 144, 114 P. (2d) 1100.

In sustaining the judgment for plaintiff in the *Ward* case, the Court of Appeals said at page 290 of its opinion:

"After viewing the scene of the accident and hearing the evidence, the jury has said that a reasonably prudent person in the same circumstances would have ascertained that the standing truck was perilously astride the track and not safely standing to one side. And while it may tax our credulity, we are unable to say as a matter of law that the twelve jurors were clearly wrong; and that the peril was not discoverable to a reasonably prudent person exercising ordinary care in the circumstances."

Certainly each factual situation must be decided on its own merits, and we are aware that cases involving a stalled motor vehicle on a railway crossing have been decided both ways. See cases collected in 70 A.L.R. (2d) 100. Before a case may be submitted to a jury with an instruction on last clear chance, there must be evidence in the record that both parties were negligent, and that defendant, assuming he should have seen and recognized plaintiff's peril, had a last clear chance to avoid the collision. See *Anchor Co. v. D. & R. G. W.* (1954), 130 Colo. 548, 277 P. (2d) 523. And, of course, the plaintiff must have plead it as well. Compare: *La Garde v. Aeverman* (1960), 144 Colo. 465, 356 P. (2d) 971.

In the present case the engineer testified that he first saw the vehicle when the locomotive was about

1500 feet from the crossing but did not apply the emergency brakes until 1000 feet from the crossing. He testified that upon application of the brakes the train could not be stopped in less than 1400 feet. Witnesses for plaintiff testified, however, that the train could be stopped in 1100-1200 feet after application of the brakes. Even if the jury were to disregard the testimony of plaintiff's witnesses, and follow the engineer's statement, it could still reasonably conclude from the evidence that he should have recognized plaintiff's peril and applied the brakes when he noticed the object for the first time at 1500 feet instead of waiting until he was within 1000 feet of the crossing, and that had he done so the accident would have been averted. Furthermore, in view of the engineer's testimony that he was not looking at the crossing until the train reached the whistle post, 1500 feet from the crossing, the jury could have concluded that he was not exercising reasonable care under the circumstances. As an experienced engineer on this route, he was aware of the approaching crossing, and might well have exercised more caution. On this point there is room for difference of opinion. Witnesses for the plaintiff testified that the truck could have been seen before the train reached the whistle post. And, photographs in evidence show there is merit to this position. Defendants in error deny this contention however. From the conflict in evidence on the latter point alone we conclude that the trial judge was correct in submitting the last clear chance question to the jury and that his instructions were not improper.

Defendant Santa Fe argues that it had nothing to do with the operation of the train in question and therefore should not be held responsible for its negligent operation. This position is not supported by the record. The train itself was operated on tracks of the Denver and Rio Grande Western Railroad Company by the Colorado and Southern under a Joint Operating Agreement. It appears that the Denver and Rio Grande owns the west-

erly single track used for going from Denver to Pueblo, that the Santa Fe owns a similar track east of this used for going from Pueblo to Denver, and that both of these companies together with the Colorado and Southern use both tracks under the Agreement in question. The engineer, McIntosh, was an employee of the Colorado and Southern Company, but on this particular run was paid, at least in part, by the Santa Fe, and testified he was responsible to the Santa Fe superintendent. Under these circumstances, and for the purposes of this run, we hold that he may be considered as an employee of both defendants, and his acts were within the scope of that employment. Accordingly, Santa Fe cannot avoid liability to third parties by saying in effect that it contracted with others not to be liable as an employer.

The proper rule applicable here where we hold McIntosh was a joint employee is that:

"Where it appears that the actor was in the employment of two or more persons as joint employers, both or all of them may be held liable; and this is true notwithstanding the particular service being rendered was for only one of the employers, and the employee was paid directly by only one of the joint employers. The legal rule of liability cannot be affected by a contract which provides that one of several joint employers shall bear the entire responsibility for the act of their employee." 35 American Jurisprudence §537, "Master and Servant," pages 965-966.

Actually under these facts the matter of payments made to McIntosh by Santa Fe are not determinative of its liability. For example, in *D. & R.G.R. Co. v. Gustafson* (1895), 21 Colo. 393, 41 Pac. 505, it was held that:

"Employment and payment of a person are not indispensable elements to charge one as a master for the negligence of such one who renders him service. When one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable, as a master, for the negligence

of such servant when the act or failure constituting the negligence comes within the apparent scope of the servant's employment, even though the person for whom the service is rendered has not employed or paid the servant. The facts of this case sufficiently show that the defendant knowingly availed itself of the services of the flagman for a long series of years, and held him out to the public as its servant."

Several other grounds of error are raised by the defendants, but we deem them to be without merit and unnecessary to a proper determination of this cause.

The judgment must be affirmed.

MR. JUSTICE DOYLE and MR. JUSTICE McWILLIAMS did not participate.