Clifford **KASTNER**, Appellant,

v.

Bill **TOOMBS**, d/b/a To-Bi-Too Construction Co., and To-Bi-Too Construction, Inc., a corporation, Appellees.

No. 4119.

Supreme Court of Alaska.

May 9, 1980.

---

James K. Tallman, Anchorage, for appellant.

Sanford M. Gibbs, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

Clifford Kastner, the plaintiff below, appeals from the grant of a motion for summary judgment in favor of the defendants, Bill Toombs d/b/a To-Bi-Too Construction Co. and To-Bi-Too Construction Co., Inc. (hereinafter referred to collectively as "To-Bi-Too").

In August, 1975, Clearwater Drilling Company ("Clearwater"), a company owned by James Lefevre, was drilling a well and setting a water line for the Rendezvous Club in Fairbanks. Kastner had been employed by Clearwater to lay pipe for the water line. As was its custom, Clearwater had leased a backhoe from To-Bi-Too in order to excavate the ditch for the water line. In keeping with its policy, To-Bi-Too furnished the backhoe operator, Albert Malcom, and was paid an hourly rate for the machine and driver.

On August 8, Malcom arrived at the project site and was told by Lefevre where to dig the ditch. He began to dig to a depth of five feet, but was informed by Lefevre that the Club wanted it six feet deep. Malcom warned Lefevre that the soil was soft and might cave in, but was instructed to go ahead and deepen the trench anyway. When he suggested "belling" the sides of the ditch, or otherwise shoring up the ditch to prevent cave-ins, Lefevre responded that he would take care of that later. The ditch did cave in later that day, injuring Kastner.

Kastner filed suit against To-Bi-Too, claiming that it was vicariously liable for Malcom's negligence. To-Bi-Too moved for summary judgment on the ground that Malcom was a borrowed servant working for Clearwater at the time of the accident. Based on the uncontradicted depositions of Malcom, Lefevre and Toombs, the superior court granted the motion.

Kastner appeals on the ground that there was insufficient evidence to find Malcom a borrowed servant. In considering this question, we have determined that the borrowed servant doctrine which this court accepted in *Reader v. Ghemm Co.*, 490 P.2d 1200 (Alaska 1971), should now be abandoned and a rule of dual liability adopted.

At the outset we emphasize that this case was decided below under the law of agency and not because the backhoe operator, Malcom, was found free from negligence. We will proceed on the same basis. Therefore we assume, for the purposes of analysis, that Malcom was negligent. Under the facts of this case such an assumption can only be made if Malcom had a legal duty to disobey Lefevre's instructions if, had he followed them, an unsafe ditch would have been dug.

Under the doctrine of *respondeat superior* a master is liable for the torts of his servants committed while acting in the scope of their employment. *Luth v. Rogers and Babler Construction Co.*, 507 P.2d 761, 762 (Alaska 1973). Current legal thinking bases this doctrine on the concept that a business should pay for the losses which it causes. Its foundation is " 'the desire to include in the costs of operation inevitable losses to third persons incident to carrying on an enterprise, and thus distribute the burden among those benefited by the enterprise.' " *Fruit v. Schreiner*, 502 P.2d 133,

141 (Alaska 1972) quoting from Smith, *Frolic and Detour*, 23 Col.L.Rev. 716, 718 (1923).

> [I]n essence the enterprise may be regarded as a unit for tort . . . purposes. Employees' acts sufficiently connected with the enterprise are in effect considered as deeds of the enterprise itself. Where through negligence such acts cause injury to others it is appropriate that the enterprise bear the loss incurred.

*Fruit v. Schreiner*, 502 P.2d at 141 (footnote omitted).

The borrowed servant rule carves out an exception to the doctrine of *respondeat superior*. Under the borrowed servant rule a servant who is loaned by one master to another is regarded as acting for the borrowing master, and the loaning master is not held responsible for the servant's negligent acts. *Reader v. Ghemm Co.*, 490 P.2d 1200 (Alaska 1971). This result is reached even though the loaned servant is still employed by his first master and is acting within the scope of his employment. A servant may act for two masters simultaneously. *United States Fidelity & Guaranty Co. v. Forrester*, 230 Ga. 182, 196 S.E.2d 133, 134–35 (1973); *Strait v. Hale Construction Co.*, 26 Cal.App.3d 941, 103 Cal.Rptr. 487, 493 (1972); Restatement (Second) of Agency, § 226. Nevertheless, if the borrowed servant rule applies, only one of them is held vicariously liable for the servant's tort.[1]

The hallmark of the borrowed servant rule has been the inconsistent results which it has generated. We recognized this in *Reader v. Ghemm Co.*, 490 P.2d at 1204:

> The cases dealing with the loaned servant problem are confusing in their lack of consistency. As has been aptly stated, "not only are the holdings as between different jurisdictions inconsistent and irreconcilable, but the holdings within any one jurisdiction are vulnerable to the same charge." Justice Cardozo noted

that the problem "is beset with distinctions so delicate that chaos is the consequence." [Footnotes omitted].

The function of the borrowed servant doctrine is to determine which of two potentially liable masters will have to pay for the loss caused by the servant's act. The method we have used in the past for making that selection is to consider the several factors listed in Restatement (Second) of Agency § 220(2). *See Reader v. Ghemm Co.*, 490 P.2d at 1203–04. Those factors are designed to answer the question of whether a master-servant relationship exists. But the ultimate question in borrowed servant cases is not whether such a relationship exists; it is, rather, which among two masters should be liable for the servant's tort. It is therefore not surprising that consideration of the restatement factors has not yielded entirely satisfactory results:

> A major source of difficulty which courts have had in adopting and using a test to determine liability in borrowed servant cases comes from the fact that few courts have considered any policy reasons for placing liability on one employer instead of the other. The tests used by the courts in the past are based on principles derived to determine not which of two masters is liable but whether the master-servant relationship exists between the servant and one of the two employers. The answer is ambiguous because the question is inappropriate. [Footnote omitted].

Note, Liability for Torts of Borrowed Servant, 28 Ohio St.L.J. 550 at 553.

The traditional approach to the borrowed servant problem emphasizes the factor of control. The rationale is that the master having the right of control would be the one in the best position to prevent the injury. *Nepstad v. Lambert*, 235 Minn. 1, 50 N.W.2d 614, 620 (1951). Here again unsatisfactory results are reached because typically both the general employer and the

---

1. *See generally*, 2 Harper & James, *The Law of Torts*, § 26.11 at 1398 n. 14 (1956) and the comment to that note at 164 (Supp.1968).

special employer have significant elements of control: [2]

> The courts, in applying the control test, have failed to define what is meant by control. Are the courts speaking of broad control such as the power to discharge the employee, which is usually retained by the general employer, or of detailed on-the-spot control which is usually exercised by the special employer? The courts which emphasize control in the broad sense make the general employer liable; whereas if detailed on-the-spot control is emphasized the special contractor is held liable. In any case under the control test the result depends almost entirely upon which facts the courts wish to emphasize, because in almost all the cases both the general employer and the special employer exercise some type of control over the servant.

Note, *supra* 28 Ohio St.L.J. at 552.

Another approach asks whose business is being done,[3] apparently with the intent of placing liability upon the master who benefits from the servant's acts. Unfortunately, the answer almost always is that to a substantial extent the servant's work is furthering the purposes of both masters.

> The whose business test has limited usefulness because in most cases . . . the servant is furthering the work of both his general and special employers. Both are being benefited by the servant's labor. Consequently, unless the servant has substantially deviated from the business of one of his two employers, this test

provides no real basis for determining which employer should be liable.

Note, *supra* 28 Ohio St.L.J. at 551–52.

> The only trouble with the whose business test is that, in difficulty of application, it is as bad as the control test. The results are unpredictable, uncertain, and in many cases probably unjust.

*Smith, supra,* 38 Mich.L.Rev. at 1234.

■ In our opinion the borrowed servant rule as an exception to the doctrine of *respondeat superior* has imparted unnecessary complexity to the law of agency. We see no reason for a rule of exclusive liability in situations in which a servant acting within the scope of his employment for two masters negligently causes injury to another. The question of how the loss so caused should be distributed should be determined in accordance with principles of contribution [4] and indemnity.[5] These principles have been devised to answer questions concerning the allocation of losses among potentially responsible parties. These principles may not be easy to apply in every case, but they are at least directly responsive to the problem, while the various approaches taken under the borrowed servant rule are not.

There is considerable authority supporting the position which we have taken. For example, Professor Mechem has argued that dual liability is the simplest and most practical solution to the borrowed servant problem. F. Mechem, *Outline of the Law of Agency,* § 458 (4th ed. 1952). In Harper & James, *The Law of Torts,* dual liability is

---

**2.** Moreover, reliance on control as the critical factor is weakened somewhat because control has come to be regarded as unnecessary to the application of *respondeat superior* in cases where the servant makes a "detour" from his master's business for purposes of his own. *See* Smith, *Scope of the Business: The Borrowed Servant Problem,* 38 Mich.L.Rev. 1222, 1229–33 (1940). *See also Fruit v. Schreiner,* 502 P.2d 133, 139–41 (Alaska 1972).

**3.** *See Standard Oil Co. v. Anderson,* 212 U.S. 215, 221–22, 29 S.Ct. 252, 254, 53 L.Ed. 480, 483–85 (1909); *Devaney v. Lawler Corp.,* 101 Mont. 579, 56 P.2d 746 (1936); *Charles v. Barrett,* 233 N.Y. 127, 135 N.E. 199 (1922).

**4.** Alaska has a statutory contribution system. AS 09.16.010–060 *See Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426 (Alaska 1979).

**5.** Among the several indemnity cases which we have decided which may be relevant in dual servant cases are *Amoco Production Co. v. W.C. Church Welding & Contracting Inc.,* 580 P.2d 697 (Alaska 1978); *Manson-Osberg Co. v. State,* 552 P.2d 654 (Alaska 1976); and *Golden Valley Elec. Ass'n v. City Elec. Serv. Inc.,* 518 P.2d 65 (Alaska 1974).

referred to as a "sensible result."[6]   Among the cases which have rejected exclusive liability in the borrowed servant context are *Vance Trucking Co. v. Canal Insurance Co.,* 249 F.Supp. 33 (D.S.C.1966), *aff'd* 395 F.2d 391 (4th Cir. 1968); *Colorado & S. Ry. v. Duffy Storage & Moving Co.,* 145 Colo. 344, 361 P.2d 144 (1961); *Gordon v. S. M. Byers Motor Car Co.,* 309 Pa. 453, 164 A. 334 (1932); *Strait v. Hale Construction Co.,* 26 Cal.App.3d 941, 103 Cal.Rptr. 487 (1972); *Keitz v. National Paving Contracting Co.,* 214 Md. 479, 136 A.2d 229 (1957).

For these reasons we reverse the order of the superior court granting summary judgment based on the borrowed servant rule and remand for further proceedings.

REVERSED AND REMANDED.

---

**6.**   Harper & James, note 1 *supra* § 26.11 at 1398 n. 14.   *See* Rauschlein and Gregory, *Handbook on the Law of Agency and Partnership,* § 53, at 104–06 (1976); Skogland, *Borrowed Servants,* 76 Commercial L.J. 307 (1971); Note, *Borrowed Servants and the Theory of Enterprise Liability,* 76 Yale L.J. 807 (1967).   *See also* 1 B. Larson, *The Law of Workmen's Compensation,* § 48 (1979), which holds that the general employer of a loaned servant is always responsible for the servant's injury while the special employer sometimes shares that responsibility.

While the Restatement (Second) of Agency, § 227 does not unambiguously reject the borrowed servant rule, it does contain a comment and an illustration supporting dual liability un-

der facts such as we have here.   Comment *d.* states in part:

If the employee does the very act directed by the temporary employer, the latter is responsible for having directed it, and the first employer is responsible as a master if the act is within the scope of his general employment. Illustration 8 of this comment states:

[P rents to B for a week a truck and driver, A at five dollars per hour, to do general express work . . .] B directs A to drive rapidly and in excess of the speed limit.   Because of the rapid driving, A runs into T.   P, as the master of A, is subject to liability to T.   B is also subject to liability to T since he directed the negligent act.