Thomas W. CUFFE, Appellant,

v.

SANDERS CONSTRUCTION COMPA-
NY, INC., An Alaska Corporation,
and Rick Sanders, Appellees.

No. S–1701.

Supreme Court of Alaska.

Jan. 8, 1988.

Gerald E. Stinson, Fairbanks, for appel-
lant.

Dennis M. Bump, Joseph S. Slusser, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellees.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

This case involves the exclusive remedy provision of the Alaska Workers' Compensation Act, AS 23.30.055. The superior court granted a directed verdict against plaintiff Thomas W. Cuffe and denied his motions for reconsideration and for new trial. Cuffe appeals these rulings.

In April, 1982, Thomas Cuffe was employed as a journeyman ironworker and certified welder by Griffard Steel Company (GSC). GSC was the erecting ironwork subcontractor in the construction of the "Butler building" on the North Slope. The general contractor on the project was Sanders Construction Company, Inc. (SCC). On April 24, 1982, a forklift operated by Rick Sanders hit a building support, dislodging an unsecured beam which fell and injured Cuffe. Cuffe brought suit for damages against Sanders and SCC, alleging that Sanders' negligence in the operation of the forklift caused his injuries. Sanders' employment status at the time of the accident is hotly disputed. Cuffe contends that Sanders was acting in his capacity as president and project manager for SCC at the time of the accident; Sanders asserts that he was employed solely as a forklift driver for GSC and was, thus, a "fellow employee" of Sanders, protected from suit by the exclusive remedy provision of the Workers' Compensation Act.

The case proceeded to trial where, at the close of plaintiff's case-in-chief, the trial court granted defendants' motion for directed verdict as to both Sanders and SCC. The court ruled that (1) Sanders was Cuffe's "fellow employee" at the time of the accident and, thus, immune from suit, under the exclusive remedy provisions of the Workers' Compensation Act;[1] and (2) the evidence introduced by plaintiff failed to establish that SCC had "retained control" over GSC's operations sufficient to subject it to liability for injury to GSC's employee. Cuffe subsequently moved the court for reconsideration of its prior order and for a new trial. The court denied Cuffe's motion, and this appeal followed.

## I. THE DIRECTED VERDICT AS TO SANDERS

In reviewing the grant of a directed verdict, our role is to determine whether the evidence and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the nonmoving party, is such that reasonable jurors could not differ in their judgment. *Dura Corp. v. Harned,* 703 P.2d 396, 402 (Alaska 1985); *City of Delta Junction v. Mack Trucks,* 670 P.2d 1128, 1130 (Alaska 1983). Where there is conflicting evidence, or where the evidence is uncontradicted but competing inferences may reasonably be drawn therefrom, a directed verdict is improper. *Bullard v. B.P. Alaska,* 650 P.2d 402, 403 (Alaska 1982); *see also* 75 Am.Jur.2d *Trial* §§ 493, 494, 520–21, 537 (1974) (discussing the various standards to be applied on motion for directed verdict). Thus, we must first determine whether the trial court was correct in concluding that, after viewing plaintiff's evidence, no reasonable juror could differ regarding Sanders' status as Cuffe's "fellow employee" at the time of the accident.

Cuffe contends that the trial court erred in granting a directed verdict in this case because the evidence in question is susceptible to competing inferences. He further argues that it was *per se* error for the trial court to grant a directed verdict at the close of plaintiff's case-in-chief, insomuch as this constitutes an impermissible shifting of the burden of proof regarding Sanders' coemployee defense. While we are not prepared to say that the trial court must

---

1. AS 23.30.055 provides in part:
   The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee ... and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.

ignore even conclusive, unrebutted evidence of coemployee status when it is presented in plaintiff's case-in-chief,[2] it is clear that, where, as here, conflicting inferences may be drawn from the evidence actually introduced, a directed verdict is improper.

The evidence at trial established that, at the time of the accident, Sanders was operating a forklift which was being used to complete the ironwork assembly job for which GSC had contracted. There was also evidence suggesting that, while operating the forklift, Sanders was in fact taking his direction from the GSC foreman. On the other hand, Cuffe testified at trial that Sanders had personally represented to him that Sanders was "the project manager" for SCC on the job and that he (Sanders) could "do anything [he] want[ed]" on the worksite, including operate a forklift for GSC.[3]

Sanders contends that the foregoing evidence, even when viewed in the light most favorable to Cuffe, can reasonably lead the trier of fact to only one of two possible conclusions: either Sanders was solely in the employ of GSC at the time he drove the forklift, or he was in the employ of both GSC and SCC at that time. In either case, Sanders asserts, he is protected by the exclusive remedy provisions of AS 23.30.-055, which prohibits tort suits against a worker's "fellow employees" concerning job-related injuries.

Our prior decisions have recognized that an employee may be employed simultaneously by two or more employers while performing a given employment func-

tion. *Kastner v. Toombs*, 611 P.2d 62, 65 (Alaska 1980); *Laborers and Hod Carriers Union, Local No. 341 v. Groothuis*, 494 P.2d 808, 812–14 (Alaska 1972); *see also Kroll v. Reeser*, 655 P.2d 753, 755–56 (Alaska 1982); *Ruble v. Arctic General*, 598 P.2d 95, 97–99 (Alaska 1979). Where the employee is performing services for the mutual benefit of both employers at the time of the accident, we think that such simultaneous employment would logically carry with it the statutory immunity afforded coemployees under the Workers' Compensation Act.[4] *Accord, Marsh v. Tilley Steel*, 26 Cal.3d 486, 162 Cal.Rptr. 320, 325–26, 606 P.2d 355, 360–61 (Cal.1980); *Campbell v. Harris–Seybold Press*, 73 Cal. App.3d 786, 141 Cal.Rptr. 55, 58 (1977). Before an employee may avail himself of such immunity, however, he must, at minimum, offer evidence sufficient to establish that such mutual employment in fact existed at the time of the accident for which the immunity is sought. Since it is axiomatic that the employer/employee relationship can only be created by contract, *Selid Construction v. Guarantee Insurance*, 355 P.2d 389, 393 (Alaska 1960), such evidence must be sufficient to establish the existence of an express or implied employment agreement between the parties. In the case at bar, such evidence is notably absent.

In *Selid*, we examined the question of whether the mere performance of duties at the direction of one other than one's employer was sufficient to create a new or additional employment relationship. We concluded that it was not, stating:

---

**2.** *Cf. Overfield v. Garner*, 595 S.W.2d 446, 447 (Mo.App.1980) (trial court permitted to direct verdict when plaintiff's evidence establishes recovery barred by affirmative defense); *see also Schweizer v. Amalgamated Butcher Workmen of North America, Local No. 641*, 141 Colo. 211, 347 P.2d 516, 517–18 (1959).

**3.** In addition the court below heard testimony from at least one other ironworker on the Butler building project who expressed some confusion as to whether Sanders was giving the orders or receiving them. Clarence Treager, a GSC employee, testified that he felt that Sanders was "highballing" the job, and that he had on at least one occasion witnessed Sanders giving or-

ders to George Griffard, owner of GSC, on the jobsite. Further, Traeger testified that he was "having a hard time knowing who was boss" on the project.

**4.** Where an employee is performing services for each employer separately, the employment might be deemed "dual," rather than "joint," and the extent of the employee's immunity would depend upon the severability of the employee's activities at the time of the accident. *See Groothuis*, 494 P.2d at 813; *see generally* 1C A. Larson, *The Law of Workmen's Compensation* § 48.41 (1986).

Once created, the [employment] relationship cannot be changed to substitute another employer without the employee's consent. The employee must have understood and agreed before there can be any transfer to another employer. Where the employee commences to serve another at the direction of his employer, no new relationship is necessarily created. He may simply be performing his duty to the employer who gave the order. Even though his actions may be controlled by the new master, no new relationship is created in the absence of an express or implied contract between the employee and the new master.

355 P.2d at 393 (footnote omitted).

■■■ In the case at bar, the fact that Sanders received direction from the GSC foreman while operating the forklift does not, of itself, evidence an agreement between Sanders and GSC that Sanders was to be considered a GSC employee.[5] On the contrary, Sanders may well have been driving the forklift at the behest of SCC and in furtherance of that company's interests.[6] In any case, we believe that reasonable jurors could differ on the question. Consequently, we reverse the trial court's ruling as to Sanders.

## II. THE DIRECTED VERDICT AS TO SCC

In defending the lower court's ruling, SCC argues that, regardless of Sanders' personal liability, a directed verdict as to SCC was appropriate because Cuffe failed to offer evidence at trial sufficient to establish that SCC had "retained control" over GSC's activities, citing *Morris v. City of Soldotna*, 553 P.2d 474 (Alaska 1976) and *Hobbs v. Mobil Oil Corp.*, 445 P.2d 933 (Alaska 1968), and subsequent cases.

■■■ SCC is correct in pointing out that we have adopted the "retained control" theory of recovery, as set forth in Restatement (Second) of Torts § 414 (1965),[7] for determining liability in certain general contractor/subcontractor contexts.[8] This theory does not, however, constitute a blanket immunity from suit for general contractors as to all injuries sustained by employees of their respective subcontractors. As we explained more fully in *Moloso v. State*, 644 P.2d 205, 210 (Alaska 1982) (emphasis added):

In general, the employer of an independent contractor owes no duty to the independent contractor's employees to protect them from the negligence of the employees' own master. On the other hand, the employer of the independent contractor *does* owe to these servants the duty to avoid endangering them *by the employer's own negligent actions or omissions.*

We expanded on this latter point:

Section 414 [of the Restatement] is sometimes referred to as an "exception" to the general rule that the employer of an independent contractor is not liable for injuries sustained by the employees of that independent contractor. Calling it an "exception," however, appears to be nothing more than a circuitous route around the simple rule that anyone, in-

---

**5.** The record suggests that Sanders did offer evidence of such an agreement in an earlier motion for summary judgment. We decline, however, to accept Sanders' suggestion that we view the directed verdict as "essentially [a] deferred ruling on the Motion for Summary Judgment." We think such evidence should more appropriately be placed before the trier of fact on retrial.

**6.** It stands to reason that SCC as general contractor on the job would be benefitted by anything which assisted GSC in speedy and efficient completion of its assigned task, including, presumably, the provision of a needed forklift driver.

**7.** Restatement (Second) of Torts § 414 provides in pertinent part:

One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

**8.** *See Everette v. Alyeska Pipeline Service Co.*, 614 P.2d 1341, 1347 (Alaska 1980); *Hammond v. Bechtel Inc.*, 606 P.2d 1269, 1274 (Alaska 1980); *Morris v. City of Soldotna*, 553 P.2d 474, 478 (Alaska 1976); *Hobbs v. Mobil Oil Corp.*, 445 P.2d 933, 934 (Alaska 1968).

cluding an employer of an independent contractor, may be held liable for his or her *own* negligence.

644 P.2d at 211 n. 5 (emphasis in original).

 Thus, when a general contractor injures a subcontractor's employee by his own affirmative act of negligence, the general contractor remains liable without regard to the extent of his control over the subcontractor's work. Accordingly, if, as Cuffe contends, Sanders was an employee of SCC acting within the course and scope of his employment at the time he was operating the forklift, Sanders' acts are attributable to SCC under standard *respondeat superior* principles. *See generally,* 53 Am. Jur.2d *Master and Servant* § 417 (1970). SCC would remain responsible for those negligent acts, notwithstanding the degree of control which it exercised over GSC, *Moloso,* 644 P.2d 205, 210–11, and notwithstanding the fact that Sanders may also have been acting as an employee of GSC, *Kastner,* 611 P.2d at 65. Because SCC's liability, if any, depends upon whether Sanders was acting within the scope of his employment as a servant of SCC at the time of the accident, a directed verdict prior to jury determination of this question was erroneous.[9]

The judgment of the superior court granting a directed verdict in favor of defendants Sanders and SCC is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

9. We note that if Sanders was acting within the scope of his employment for both masters at the time of the accident, the fact of his immunity should not affect the liability of SCC. *Marsh v. Tilley Steel,* 26 Cal.3d 486, 162 Cal.Rptr. 320, 325–27, 606 P.2d 355, 360–62 (1980). Whether Sanders would be liable to SCC in an action for indemnity is a question we need not resolve at this time.